ROAD DISTRICT NUMBER FOUR, SHELBY COUNTY, TEXAS, v. JAMES V. ALLRED, ATTORNEY GENERAL.

No. 6643.   Decided February 7, 1934.
(68 S. W., 2d Series, 164.)

J. M. *Sanders*, of Center, and *Oliver J. Todd*, of Beaumont, for relator.

All the roads of the State, whether the funds for their construction were furnished by the State, the county or a road district, are owned by the State; and it is proper that they be paid for with State funds. Aransas Pass v. Keeling, 112 Texas, 339, 247 S. W., 818; Robbins v. Limestone County, 114 Texas, 345, 268 S. W., 915.

Counties and road districts are mere political subdivisions of the State; they are not municipal corporations and State funds can be granted to them, without constitutional restriction. McQuillan Mun. Corp. (2 ed), par. 136; Heigel v. Wichita County, 84 Texas, 392; Wharton County Drainage District No. 1 v. Higbee, 149 S. W., 381.

If the power to pass the Act existed, it could not be within the province of the Attorney General to pass upon the wisdom

or policy of legislation.  People v. Draper, 15 N. Y., 545; McCray v. United States, 195 U. S., 27, 49 Law Ed., 95.

*James V. Allred,* Attorney General, *Gaynor Kendall,* and *Scott Gaines,* Assistants Attorney General, for respondent.

A road district created and made a body corporate by the Legislature, under the authority granted by Section 52 of Article 3 of the Constitution is a "munciplal or other corporation," within the meaning of such article and section.  Road District Number Four of Shelby County, being a "corporation" within the meaning of Art. 3, Sec. 51, of the Constitution, the Legislature has no power to grant nor authorize the making of any grant of public money to such district.  And the Special Act of the Legislature attempting to appropriate public money of the State to the payment of bonds issued for the purpose of constructing roads, but the proceeds of the sale thereof were diverted dishonestly and appropriated to private uses, is unconstitutional and void because such appropriation is a grant of public money of the State to said road district gratuitously and for purposes not related to the State's governmental duites.  Bexas County v. Linden, 110 Texas, 339, 220 S. W., 761; Wharton Co. Drain. Dist. No. 1 v. Higbee, 149 S. W., 381; Browning v. Hooper, 269 U. S., 396, 70 L. Ed., 330; Jones v. Williams, 121 Texas, 94, 45 S. W. (2d) 130.

*W. M. Harris,* of Dallas, *Jewel J. Lightfoot* and *E. B. Robertson,* both of Fort Worth, as amicus curiae.

Mr. Judge CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original mandamus proceeding brought by Road District Number Four of Shelby County, Texas, against James V. Allred, Attorney General of Texas, to compel his approval of a little over $300,000 refunding bonds of the district.

In 1919 the Commissioners Court of Shelby County entered an order purporting to create Road District Number Four of Shelby County County, Texas.  After this order was entered the bonds of the district in the total sum of $350,000 were voted by the district, issued by the Court, approved by the Attorney General, registered by the Comptroller and returned to the Court.

After the happening of the above events the Court sold and delivered to one E. L. Twing $300,000 of the above bonds. Twing paid $40,000 of this consideration.  He then absconded and never paid the balance due, $260,000.  Twing sold all of

the $300,000 of bonds, and they went into the hands of bona fide holders for value. Later the Court sold the remaining $50,000 of bonds, and received the proceeds thereof. All these bonds were later validated by the Legislature. Twing v. Rhodes, 118 Texas, 410, 16 S. W. (2d) 258.

From the above it appears that the district received $90,000 out of the original $350,000 bond issue. The $260,000 has never been paid to the district, and it has never received any consideration whatever therefor.

The $350,000 in bonds were originally voted to construct what are now parts of State Highways Numbers twenty-two and thirty-five in the district. Since the district never received the $260,000 of course none of it was ever expended on such roads. The record does not inform us what was done with the $90,000. The Relator does not make any allegation that it was used on any public road, and we presume that it was not so used.

As a part of the history of this transaction, the district in one way or another, resisted the validity of the $260,000 bonds for which it had never received the consideration. It was finally determined that these bonds are valid obligations against the district. Twing v. Rhodes, 118 Texas, 410, 16 S. W. (2d) 258; Rhodes v. Twing (Com. App.), 41 S. W. (2d) 13.

From the record we gather that there is now outstanding against the above district in road bonds, and road bonds that have been merged into final judgments against the district, more than $300,000.

In the above state of the record the Forty-third Legislature passed, as a Special Road Law for Shelby County, Chapter 55, S. B. No. 484, Special Laws Forty-third Legislature, 1933, p. 67. It is the question as to the validity of this Act that has caused this proceeding. Since the decision of this suit must depend upon the construction and validity of the Act just mentioned we deem it expedient to quote it in full. It is as follows:

"SPECIAL ROAD LAW FOR SHELBY COUNTY AMENDED.

"S. B. No. 484          Chapter 55.

"An Act to amend Chapter 174 passed at the Regular Session of the Thirty-ninth Legislature of Texas, approved on the 16th day of March, A. D. 1925, creating a special road law for Shelby County, and adding thereto Sections 3 to 14, providing that the Commisisoners' Court of Shelby County may refund any and all valid outstanding bonded indebtedness or judgments recovered on bonded or other indebtedness of said County, to-

gether with interest accrued thereon, by the issuance of funding or refunding bonds without a vote of the taxpayers of said county; authorizing the Commissioners' Court of said County to levy and assess road and bridge taxes and road maintenance taxes as provided by Article 8, Section 9 of the Constitution of Texas; authorizing the Commissioners' Court of said County to fund and refund the legal indebtedness outstanding against its road and bridge fund at the time of the issuance of such funding or refunding bonds, setting forth the method of said operation; authorizing the said Commissioners' Court to refund the bonded indebtedness or judgment indebtedness recovered on bonds, both principal and interest, of road district No. 4 of said County, together with the accrued interest thereon, and providing for the rate of interest, maturities and form of such bonds; that the same shall be approved by the Attorney General and registered by the Comptroller, and that said bonds may be exchanged for such outstanding bonded judgment or other indebtedness, or may be sold and the proceeds used to pay such bonded judgment or outstanding indebtedness; providing for the levy of taxes for the payment of principal and interest of such funding or refunding bonds; providing that such refunding bonds shall be permitted to participate in and be paid from the 'County and Road District Highway Fund' provided for in Section Six, Chapter Thirteen, passed at the Third Called Session of the Forty-second Legislature and making them eligible to participate in and be paid from said fund, and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. That Chapter 174 of the Regular Session of the Thirty-ninth Legislature of the State of Texas, approved March 16, 1925, be amended by adding thereto Sections 3 to 14, as follows:

"Sec. 3. The Commissioners' Court of Shelby County, Texas, is authorized and empowered to fund into the bonds of Shelby County, Texas, such legal indebtedness of the County, chargeable against the road and bridge fund, in the form of scrip, or warrants, or bonds, either or all. Such funding bonds may be issued by the court, payable serially or otherwise, within a period of time, not exceeding forty years, as the court may direct, or may be issued payable within forty years from the date thereof, and shall bear interest at a rate of not more than six (6) per cent per annum, payable annually or semi-annually, the rate and interest payment dates to be determined by the court, in such denominations as may be provided by the court;

at such time as said bonds shall be issued, it shall be the duty of the Commissioners' Court to levy an annual ad valorem tax on all taxable property within the county, sufficient to provide for the payment of the principal thereof, as the same matures; and in such cases, it shall not be necessary to submit the questions of the issuance of said funding or refunding bonds to a vote of the people. The Commissioners' Court is authorized to issue said bonds in exchange for like amounts of the outstanding scrip, warrants or bonds of said county. Said bonds when executed shall be approved by the Attorney General and shall be registered by the Comptroller; provided that the Commissioners' Court shall determine at the time of passing the refunding order the amount of tax rate required, based on the then assessed valuation of the taxable property of Shelby County, to create the necessary sinking fund for, and to pay the interest on, all obligations to be included in said refunding order, and shall also calculate the tax rate that will be required to pay the interest on and create a sinking fund to retire the funding or refunding bonds authorized in lieu thereof.

"Sec. 4. From and after the taking effect of this Act, it shall be unlawful for the Commissioners' Court of Shelby County to issue or cause to be issued any warrant, scrip, or other evidence of indebtedness, or to create any debt against the road and bridge fund of said county, except as authorized by this Act, in excess of the current revenues of said county for road and bridge purposes; provided that in case of great calamity, said court may issue warrants against the road and bridge fund in excess of the current revenues, for the purpose of repairing roads and building bridges occasioned by such calamity, but in no instance shall such warrants exceed the limits provided by the Constitution of the State of Texas; and provided, further, that no warrant shall be issued for such purposes until first authorized by order passed by said court; and provided, further, that said order may recite fully the necessity therefor, and particularly specify the several purposes for which said warrants are to be issued, which said order shall be spread upon the minutes of said court.

"Sec. 5. The Commissioners' Court of Shelby County is hereby authorized to levy and cause to be assessed and collected any and all ad valorem taxes now authorized to be levied on the taxable property of Shelby County, which may be levied under Article 8, Section 9 of the Constitution of Texas, which taxes may be used for the payment of principal and interest of indebtedness incurred for such purposes, or in the mainte-

nance of the roads of said county, as the Commissioners' Court may direct.

"Sec. 6.   The Commissioners' Court of Shelby County may fund, refund, compromise or settle in whole or in part the valid outstanding bonded indebtedness or judgments recovered on such bonded indebtedness, both principal and interest, of Road District No. Four (4) of said county incurred under the provisions of Section 52, of Article 3 of the Constitution and laws of this State, for the purpose of constructing, maintaining and operating macadamized, gravelled or paved roads or turnpikes, or in aid thereof, by the issuance of funding or refunding bonds without a vote of the taxpayers for an amount sufficient to consummate such compromise or settlement not to exceed the amount unpaid on such outstanding indebtedness. Such funding or refunding bonds may be exchanged in whole or in part for bonds or such judgment outstanding indebtedness, of said defined Road District Number Four (4) of said county, or may be sold and the proceeds applied in the purchase or payment of the outstanding bonded or judgment indebtedness, and may be exchanged or sold from time to time in such amounts as may be required for refunding and/or paying such outstanding bonds and judgment indebtedness.

"Sec. 7.   Before issuing such refunding bonds the Commissioners' Court of said county shall, by an order entered on the minutes, recite the amount of bonds that will be necessary to fund, refund or settle the outstanding bonded or other indebtedness of said defined Road District Number Four (4) of said county.

"Sec. 8.   Such refunding bonds shall be in such denominations and amounts and shall mature not later than thirty years from their date, with such options of redemption as may be fixed by the Commissioners' Court, or they may be issued to mature serially in approximately equal portions every year for not exceeding thirty years from their date. They shall be dated and signed by the County Judge, countersigned by the County Clerk, registered by the County Treasurer, and the seal of the Commissioners' Court shall be impressed upon each of said bonds. Facsimile signatures of the County Judge and County Clerk may be printed or lithographed upon the interest coupons. Such bonds shall be made payable at such place as may be fixed by the Commissioners' Court, and shall bear interest from their date at a rate not exceeding the rate of interest which the said bonds and/or judgments being refunded bear, payable semi-annually, to be evidenced by coupons attached to each of said bonds.

"Sec. 9. Before such refunding bonds are exchanged, sold or put on the market for sale or exchange, the Commissioners' Court shall, and annually thereafter so long as said bonds or any of them are outstanding, levy a tax sufficient to pay the interest on such bonds as they mature, and to provide a sinking fund sufficient to pay the principal of the bonds at maturity.

"Sec. 10. When examined and certified by the Attorney General, said bonds shall be registered by the Comptroller, without requiring the old bonds or judgment evidencing indebtedness to be presented to him for cancellation. Said bonds shall be delivered to the County Treasurer who shall register them in a book kept for such purpose, and after being so certified and registered such bonds shall continue in the custody of the Commissioners' Court of the county and shall by said court be exchanged in whole or in part for such outstanding and accrued interest, or may be sold, either in whole or in part, at not less than their par value and accrued interest, and the purchase money therefor shall be forthwith used in the purchase and/or in payment of such outstanding bonds or judgment indebtedness.

"Sec. 11. The Commissioners' Court shall require such outstanding bonds or judgment indebtedness to be surrendered or cancelled at the time or times such new refunding bonds are exchanged therefor, or at the time or times the same are paid with the proceeds of sale of such new bonds.

"Sec. 12. All road bonds of defined Road District Number Four (4) of Shelby County, Texas, heretofore issued by said district, having been authorized and issued for the purpose of constructing and maintaining highways now incorporated in the System of State Highways and known as parts of State Highways Numbers twenty-two (22) and thirty-five (35) shall be refunded as provided in this Act. All such refunding bonds shall be deemed and are hereby declared to be eligible to participate in and be paid out of the funds provided in Chapter thirteen (13) passed at the Third Called Session of the Forty-second Legislature, and designated therein as 'County and Road District Highway Fund' and the Board of County and District Road Indebtedness provided for in said Act shall admit all of said refunding bonds into full participation in said fund with other bonds heretofore or which may hereafter participate therein without requiring the formality of proof that all of the funds represented by such refunding bonds had been actually spent in the construction of such highways aforesaid. The County Judge or the County Treasurer of Shelby County,

Texas, shall file an affidavit with said Board of County and District Road Indebtedness, stating the number and the amount thereof of all such refunding bonds issued for and on behalf of said defined District Number Four (4) of Shelby County, and that such bonds had been issued for the purpose of refunding the road bond indebtedness of said district; said affidavit, when so filed, shall require said Board to admit each and all of said refunding bonds to equal pro rata participation in the said County and Road District Highway Funds aforesaid.

"Sec. 13. This Act is not intended to repeal any general law of this State, but is cumulative thereof, and the same shall be applicable where not in direct conflict with the provisions of this Act, but where the general law shall be in conffict with this Act, the provisions of this Act shall be controlling.

"Sec. 14. The fact that the present special road law of Shelby County is deficient and inadequate, and that the defined Road District Number Four (4) of said county has heretofore issued bonds and incurred indebtedness for the purpose of constructing, maintaining and operating macadamized, gravelled or paved roads and turnpikes, or in aid therefor under the Constitution and laws of this State, which it has been unable to pay at maturity, on account of its inabiliity to collect sufficient taxes therefor, and on account of the great depreciation of values of taxable property in said defined Road District, resulting in defaults of payment of bonds and the interest at maturity, greatly impairing its credit, and in instances suits have been brought and judgments recovered on such bonds and interest, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and such Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted.

"(Note.—S. B. No. 484 passed the Senate by a vote of 29 yeas, 0 nays; passed the House by a vote of 102 yeas, 0 nays, 2 present not voting).

"Approved April 25, 1933.

"Effective April 26, 1933."

After the passage of the above Act the Commissioners' Court of Shelby County, Texas, on July 10, 1933, at a regular term of said court, at which were present all members thereof, passed an order providing for the refunding of all the outstanding bonded indebtedness, and judgments taken on bonded indebtedness, of the ditsrict. This order fixed the indebtedness to be refunded, the forms, dates, numbers and denominations of the refunding bonds, and coupons, and levied a tax,

on its fact, suffcient to pay the same. Also this order provided for the exchange of refunding bonds for the outstanding bonds, and judgments on bonds, and further provided for the proof necessary to secure the approval of the refunding bonds by the Attorney General, etc.

After the happening of these events the refunding bonds provided for by the above order, together with a transcript of the proceeds pertaining thereto were presented to the Attorney General. Such officer refuses to approve these bonds and this proceeding followed.

It will be noted that Section 12 of the above quoted Act declares that the original bonds of Road District Number Four of Shelby County, Texas, were "passed and issued for the purpose of constructing and maintaining highways now incorporated in the System of the State Highways and known as parts of State Highways Numbers twenty-two (22) and thirty-five (35)," etc. It is not asserted that any part of the proceeds of the old bonds here sought to be refunded ever went into either of the above roads; or, for that matter, into any public road. We treat the case as though no part of the proceeds of any of the original road bonds ever went into any public road.

It will further be noted that Section 12 of the Special Act under consideration expressly provides:

" * * * * all such refunding bonds shall be deemed and are hereby declared to be eligible to participate in and be paid out of the funds provided in Chapter Thirteen (13) passed at the Third Called Session of the Forty-second Legislature and designated therein as 'County and Road District Highway Fund' and the Board of County and District Road Indebtedness provided for in said Act shall admit all of said refunding bonds into full participation in said fund with other bonds heretofore or which may hereafter participate therein without requiring the formality of proof that all of the funds represented by such refunding bonds had been actually spent in the construction of such highways aforesaid. The County judge or the County Treasurer of Shelby County, Texas, shall file an affidavit with said Board of County and District Road Indebtedness, stating the number and the amount thereof of all such refunding bonds issued for and on behalf of said defined District Number Four (4) of Shelby County, and that such bonds had been issued for the purpose of refunding the road bond indebtedness of said District; said affidavit, when so filed, shall require said Board to admit each and all of said refunding bonds to equal pro

rata participation in the said County and Road District Highway Funds aforesaid." (Italics ours.)

It appears on the face of the pertinent order of the Commissioners' Court of Shelby County that in issuing the refunding bonds it seeks here to have approved, such court expressly and affirmatively purports to act under and by virtue of the various provisions of the above quoted Special Act of the Forty-third Legislature. Also it appears from the record that the bonds the district here seeks to have approved, and which if approved will be payable to bearer, will have written therein, as a part thereof, the statement that they were issued under the terms and by virtue of the provisions of the above quoted Special Act.

The Attorney General contends that Section 12 of Special Road Law under consideration is unconstitutional and void, and that therefore these refunding bonds are unconstitutional and void. Under these contentions Respondent makes the following propositions:

### "PROPOSITION ONE.

"A road district created and made a body corporate by the Legislature, under the Authority granted to the Legislature by Section 52 of Article 3, Constitution of Texas, as amended 1904, is a 'Municipal or other corporation', within the meaning of the latter terms as used in Section 51, Article 3, of the Constitution of Texas as amended, 1928.

### "PROPOSITION TWO.

"The Legislature has no power to grant nor authorize the making of any grant of public money to Road District Number Four of Shelby County, Texas, inasmuch as the same is a 'corporation' within the contemplation of Section 51, Article 3, Constitution of Texas as amended, 1928.

### "PROPOSITION THREE.

"Senate Bill No. 484, Chapter 55, Special Laws, Forty-third Legislature, Regular Session, in attempting to appropriate public moneys of the State to the payment of bonds issued by Road District Number Four of Shelby County, Texas, for the purpose of constructing roads, but the proceeds of the sale whereof were diverted dishonestly and appropriated to private uses, is unconstitutional and void because such appropriation is a *grant* of public money of the State to Road District Number Four of Shelby County, Texas, gratitously and for purposes not related to the State's governmental duties."

By the above propositions Respondent contends that the Special Road Law under consideration here, and under which these refunding bonds are attempted to be issued, and especially Section 12 thereof, is unconstitutional and void because such law is in contravention of Section 51 of Article 3 of our State Constitution. That section reads as follows:

"Sec. 51. The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporations whatsoever, provided, however, the Legislature may grant aid to indigent or disabled Confederate soldiers and sailors, who came to Texas prior to January 1, 1910, and to their widows, in indigent circumstances and who have been bona fide residents of this State since January 1, 1910, and who were married to such soldiers or sailors prior to January 1, 1910, and to indigent and disabled soldiers who under special laws of the State of Texas during the war between the States served in organizations for the protection of the frontier against Indian raiders or Mexican maurauders and to indigent and disabled soldiers of the militia of the State of Texas who were in active service during the war between the States and to the widows of such soldiers who are in indigent circumstances and who were married to such soldiers prior to January 1, 1910, provided that the word 'widow' in the preceding lines of this section shall not apply to women born since the year 1861, and all soldiers and sailors and widows of soldiers and sailors eligible under the above conditions shall be entitled to be placed upon the pension rolls and participate in the distribution of the pension fund of this State under any existing law or laws hereafter passed by the Legislature, and also to grant aid for the establishment and maintenance of a home for said soldiers and sailors, their wives and widows and women who aided in the Confederacy under such regulations and limitations as may be provided by law, provided the Legislature may provide for husband and wife to remain together in the home. There is hereby levied in addition to all other taxes heretofore permitted by the Constitution of Texas a State ad valorem tax on property of seven ($.07) cents on the one hundred ($100) dollars valuation for the purpose of creating a special fund for the payment of pensions for services in the Confederate army and navy, frontier organizations and the militia of the State of Texas, and for the widows of such soldiers serving in said armies, navies, organizations or militia; provided that the Legislature may reduce the tax rate herein levied, and provided further that the provisions of this

section shall not be construed so as to prevent the grant of aid in cases of public calamity. (Sec. 51, Art. 3, adopted election November 4, 1924.)"

■■ It is the settled law of this State that the above quoted constitutional provision is intended to guard against and prohibit the granting, or giving away, of public money, except for strictly governmental purposes. The prohibition is an absolute one, except as to the class exempted therefrom, and operates to prohibit the Legislature from making gratuitous donations to all kinds of corporations, private or public, municipal or political. Bexar County v. Linden, 110 Texas, 339. It is clear from the above that a road district is a corporation within the meaning of the above quoted constitutional provision.

■ It is also the settled law of this State that the above quoted constitutional provision does not prevent the appropriation or granting of State funds to municipal and political corporations when the money is granted to be used for a governmental purpose. Bexas County v. Linden, 110 Texas, 339; City of Aransas Pass v. Keeling, Attorney General, 112 Texas, 339.

It cannot be doubted that the effect of Section 12 of the Special Law under consideration here has effect to make a donation of State funds to the road district. If this donation is a mere gratuity it is prohibited by Section 51 of Article 3, supra. On the other hand, if the donation is made and granted to the road district for a governmental purpose, it is not a gratuity, and not prohibited by such constitutional provision. Bexas County v. Linden, supra; City of Aransas Pass v. Keeling, Attorney General, supra. We shall now proceed to determine that question.

■ As already shown none of the proceeds of the bonds for which these refunding bonds are proposed to be issued to take up were used on any public road in this State. Futhermore, none of such proceeds can ever be used for such purpose, because they are already dissipated. Under such a record we think that even if it should be admitted that the building of public roads, and especially State Highways, is a governmental function, and, should it be further admitted that the appropriation of State funds to be expended in assisting counties and road districts, in paying their outstanding bonds and warrants, the proceeds of which were used in building State Highways, is the appropriation of public money to such counties and road districts for governmental purposes, still it should

not, and cannot be held that an appropriation or grant of State money to a road district to assist it in paying road bonds, none of the proceeds of which were ever used on the public roads of the State, and can never be so used, because of the facts stated, is a grant of public money for a governmental purpose.

Relator earnestly contends that the holding of Judge Greenwood's opinion in City of Aransas Pass v. Keeling, Attorney General, supra, is authority to hold that the donation of State funds to assist in paying these bonds is not a gratuity, but the granting of public funds for a governmental purpose. The opinion in that case states the facts as follows:

"The Thirty-sixth Legislature, at its third called session, passed an act, which became effective on September 17, 1920, entitled 'An Act to aid the City of Aransas Pass in constructing and maintaining seawalls, breakwaters and shore protections in order to protect said City from calamitous overflows, by donating to it the eight-ninth (8/9) of ad valorem taxes collected on property and from persons in San Patricio County for a period of twenty years, providing a penalty for the misapplication of the moneys thus donated and declaring an emergency.'

"By the act, the State donated and granted to the City of Aransas Pass, for a period of twenty years, commencing on September 1, 1920, eight-ninths (8/9) the net amounts of the State ad valorem taxes to be collected upon the property and from persons in San Patricio County, made proper provision for the collection, audit and division of such state taxes, authorized the issuance of bonds by the City to procure money to be used exclusively to construct and maintain seawalls, breakwaters, and shore protections, in order to avert from the City calamitous overflows, and declared that the eight-ninths of the state taxes donated to the City should be held in trust and applied to create a sinking fund for the redemption of the bonds and to pay the interest thereon. The emergency clause recited that the City shipping district was only a few feet above sea level, and that the hurricanes of 1916 and 1919 had demonstrated that, without protection, lives and property within the City were in imminent danger of destruction. (Ch. 22, General Laws 36th Legislature 3rd Called Session.)"

The City of Aransas Pass voted and issued the bonds provided for in the above described Act, and presented them, with the record, to the Attorney General for Approval. Approval was refused, among others, on the ground that, in the opinion of the Attorney General, the Act authorizing such bonds and the appropriation of State funds to assist in paying them was

in contravention of Section 51 of Article 3 of our State Constitution. Our Supreme Court, speaking through Judge Greenwood, overruled this objection in the following language:

"The Act makes no grant of public money as forbidden by Section 51, of Article 3 of the Constitution. The State here bestows no gratuity. The people of the State at large have a direct and vital interest in protecting the coast cities from the perils of violent storms. The destruction of ports, through which moves the commerce of the State, is a state-wide calamity. Hence, seawalls and breakwaters on the Gulf Coast, though of special benefit to particular communities, must be regarded as promoting the general welfare and prosperity of the State. It is because of the special benefits to particultr cities and counties that special burdens on property within their boundaries, through taxation, are justified. But, the State, in promoting the welfare, advancement, and prosperity of all her citizens, or in aiding to avert injury to her entire citizenship, cannot be regarded otherwise than as performing a proper function of state government. Cities or counties furnish convenient and appropriate agencies through which the State may perform duties resting on the State, in the performance of which the cities or counties have a special interest. The use of the cities or counties as agents of the State in the discharge of the State's duty is in no wise inhibited by the Constitution in Section 51, of Article 3. Bexar County v. Linden 110 Texas, 344 to 348, 220 S. W., 761; City of Galveston v. Posnainsky, 62 Texas, 127, 50 Am. Rep., 517; Weaver v. Scurry County, 28 S. W., 836."

A reading of the above quotation demonstrates that the Aransas Pass Act was upheld on the ground that, State funds granted to the City of Aransas Pass to aid it in issuing bonds, the proceeds of which the City was in duty bound to use in discharging a governmental function, was not a gratuitous donation of public money in violatiion of Section 51 of Art. 3 of our Constitution. Certainly such a holding cannot be construed so as to give comfort to Relator here. There is certainly a vast difference between a case where public money is granted to a municipal or political corporation on condition that it assumes the unqualified burden and duty of using it for a governmental function, and a case like this, where the grant of public money is made under such circumstances that not one cent of it can ever be used in performing governmental function.

Chapter 13, Acts Forty-second Legislature, which is a general law, creates a fund to aid all counties and road districts

in this State in the payment of their outstanding road bonds, warrants and other evidences of indebtedness; but, under the provisions of such Act, its benefits are expressly limited or confined to instances where the proceeds of such bonds, warrants and other evidences of indebtedness have been *"actually expended"* on certain public roads. Section 12 of the Special Road Law under consideration here has effect to single out Road District Number Four of Shelby County, Texas, and permit its outstanding road bonds to participate in the fund created by Chapter 13, supra, when the proceeds thereof were not *"actually expended"* on the public roads named in Chapter 13, supra, or on any public road. Thus it is clear that Section 12 of the Special Act confers pecuniary benefits on this road district, and its taxpayers and bondholders, that are expressly denied to other counties and road districts, and their taxpayers and bondholders similarly situated. The Attorney General contends that this is class legislation in contravention of Section 3 of Article 1 of our State Constitution. The mere statement of such contention demonstrates that it presents a very serious constitutional question; but in view of the fact that we have already determined Section 12 of the Special Act in violation of Section 51 of Article 3 of our Constitution, we do not consider it necessary to determine it.

■ Relator finally contends that these bonds should be approved, and therefore the writ of mandamus here prayed for issued, even should it be held that Section 12 of the Special Act under which they were issued is unconstitutional. In this connection Relator contends that Section 12 can be stricken from the Act, and the balance of the Act permitted to stand. We are of the opinion that the unconstutionality of Section 12 does not render the entire Act void. It is a workable Act with Section 12 stricken.

■ In spite of this holding we do think the Attorney General should be compelled to approve these bonds under the order and record now presented to him. As already shown it appears on the face of the bond order that these bonds were issued under and by virtue of the various provisions of the above quoted Special Act. It also appears that the bonds, the form of which is stipulated in the bond order, will have written therein the same statement. These bonds will be payable to bearer, and in all probability will circulate among many persons. We do not think the Attorney General should be compelled to approve bonds which contain a statement calculated to mislead purchasers into believing that they share in a State

Fund, when they do not. The bond order and bond form should be changed so as to eliminate the danger of misleading prospective purchasers.

We recommend that the mandamus here prayed for be refused, without prejudice to the right of the Commissioners' Court of Shelby County to further proceed to refund the road bonds of its Road District Number Four in conformity with this opinion.

The opinion of the Commission of Appeals is adopted, and the writ of mandamus refused.

C. M. CURETON, Chief Justice.