



# OFFICE OF
# THE ATTORNEY GENERAL
### AUSTIN, TEXAS

RICE DANIEL
TORNEY GENERAL

July 2, 1947

Hon. D. C. Greer
State Highway Engineer
Texas Highway Department
Austin 26, Texas

Opinion No. V-291

Re: Authority of the
Texas Highway Com-
mission to enter
into an agreement
with Galveston
County for the con-
struction, mainte-
nance, and operation
of a toll tunnel.

Dear Sir:

There are submitted for our opinion four ques-
tions relating to a proposed agreement between the Texas
Highway Commission and Galveston County for the construc-
tion, maintenance, and operation of a toll tunnel in Gal-
veston County. The tunnel is to link State Highway 87
between Galveston Island and Bolivar Point, and will re-
place the State-operated ferry services now existing
between said points.

In the negotiations between the Highway Commis-
sion and Galveston County, the Commission by Minute No.
22947, has tendered to the County three different propo-
sals, the third of which has been accepted by the County,
as follows:

"THIRD, if Galveston County desires to pro-
ceed with the construction of a toll tunnel, it
should proceed with said construction, in which
case the State Highway Commission agrees to re-
move that portion of Highway No. 87 from the
highway system in order that Galveston County
might proceed with the construction and opera-
tion of such tunnel. If upon completion of such
toll tunnel Galveston County can show its legal
ability to enter into a binding contract with
the State relative to the tunnel, and if Galves-
ton County will agree by binding contract that
the bonded indebtedness on the tunnel will never
be the responsibility of the State, and if such

should ever be the case and the State High-
way Department is deprived of revenues,then
the County will indemnify the Highway Depart-
ment for such deprivation of revenues, pres-
ent and future, payable in Travis County,and
the County will give the Department the right
to approve the toll charges and examine the
books under the operation of the tunnel,then
the Highway Commission will agree in so far
as its present membership is concerned, to
cease the operation of the Department's fer-
ries and to invest the annual net operating
loss of said ferries, estimated to be approx-
imately $200,000.00, in the tunnel each year
during a current biennium, it being under-
stood that such annual payment will be effec-
tive only during the period of office of a
current Commissioner and would not be con-
strued in any way as obligating a State High-
way Commission to make authorization for pay-
ments beyond the current biennium.

"IT IS FURTHER ORDERED THAT Galveston
County be advised that, due to the need for
expedition of transportation facilities at
this point, it is necessary that complete ac-
ceptance of one of these proposals be made
within thirty days from the date of this order,
after which date this order becomes null and
void and the State Highway Engineer is directed
to proceed to the best of his judgment in im-
proving the transportation facilities on State
Highway No. 87 at Bolivar Point."

The four questions above referred to are as
follows:

"1. In harmony with the provisions of
Article 6795b, and Commission Minute No. 22947,
is the Texas Highway Commission legally author-
ized to enter into an agreement with the Com-
missioners' Court of Galveston County, which
agreement will provide that the Texas Highway
Commission will maintain the tunnel with its
own forces out of the State Highway Fund,while
the County operates the tunnel and collects
tolls for its use?

"2. If the above question is answered in

the affirmative, can the Texas Highway Commission legally contribute Highway Funds to Galveston County for the County's use in maintaining the tunnel, in lieu of the performance of the maintenance of the tunnel by the State with State forces?

"3.   Is the State Highway Commission legally authorized to commit and bind the State and future State Highway Commissions, by agreement with the County, to pay or contribute to the County a fixed sum of money from the Highway Fund each year for the maintenance of the tunnel for a term of years beyond the period of office of current Highway Commissioners, or, is the authority of the Highway Commission to bind the State in such instances limited to one biennium?

"4.   It will be greatly appreciated if you will suggest the form and text of a proposed contract between the State Highway Commission and the Commissioners' Court of Galveston County, in harmony with the above quoted minutes, and particularly reserving to the Highway Commission:
 (a)   the right to audit the County's records of cost of construction, maintenance and operation of the tunnel and the disposition of tolls,
 (b)   the right to determine the reasonableness and adequacy of the tolls to be collected by the County, and
 (c)   the right to renew and resume ferry service between Galveston Island and Point Bolivar in the event the tunnel is out of service or fails to meet the needs of the traveling public for such transportation facility."

All of the above questions, negotiations and proposals relate directly to the terms and provisions of Art. 6795-b, V. C. S., which has been amended by the past session of the Legislature. During the time this Article was law, the constitutionality was never judicially ascertained. However, this Department construed the Act in the light of this question and held the Act constitutional in

502

Opinion No. 0-6032, a copy of which is enclosed. The Fiftieth Legislature early in the session passed S. B. 76, amending Art. 6795-b. The effect of this amendment was to amend Section 1 of the Article and omit entirely the remaining sections, thereby destroying this bill for all practical purposes. The Legislature, later in the session, passed H. B. 835, which not only carried the amendment as was provided by S. B. 76, but made several changes in Article 6796-b. H. B. 835 is now the law governing such a proposal as you have outlined in your request. The difference between Art. 6795-b and H. B. 835 is very slight. The two bills are in essence the same. The new bill made these changes: (1) eliminated from the last line of Sec. 1 "leading to any port" and adds "with a maintained depth of twenty (20) feet or more"; (2) eliminated from Sec. 3 "the county shall be under no obligation to accept and pay for any property condemned and shall in no event pay for same except from the proceeds derived from the sale of the revenue bonds, and"; (3) eliminated Sec. 6; (4) added to Sec. 8 "operations" wherever the word "maintenance" appeared; (5) eliminated Sec. 10 and added: "all laws in conflict herewith to the extent of such conflict are hereby repealed." These changes are apparently an effort to meet four grounds of attack on the constitutionality of Art. 6795-b in a lawsuit which has arisen in Nueces County.

The Nueces County suit is for injunction sought in the District Court by Sam Wilson against Nueces County to enjoin the County from proceeding further in the proposed construction of a causeway within the County pursuant to Article 6795-b. The suit was predicated on the issue that Art. 6795-b was unconstitutional and four grounds of attack were made:

1. Preliminary expenses for the project could not be made from the County's general fund;

2. Inadequate consideration for the owner of condemned land;

3. The negotiable feature of the bonds made the bonds a debt of the county; and

4. A board of trustees appointed by the commissioners' court of the County

was an unwarranted delegation
of power.

The District Court granted the injunction without filing conclusions of law and findings of fact, but, in effect, the ruling was to hold that the act was unconstitutional. The County duly perfected its appeal to the Court of Civil Appeals at San Antonio and placed the issue of the validity of the act squarely before that Court. That Court, on June 25, 1947, rendered its decision in favor of the County but the decision will not be final until time expires for further appeal. See George A. Prowse et al, Appellants, vs. Sam E. Wilson, Jr., et al, Appellees, No. 11,726, in the Fourth Court of Civil Appeals.

The answer to your first two questions necessarily involves or depends upon the validity of H. B. 835. Ample authority is found in this law to make agreements and contracts necessary to carry forward the completion of the proposed project. The new Act in no way changes the power of the county and the State Highway Commission to enter into agreements necessary to complete such a project. It is stated in Section 3 of the new Act:

"that any county proceeding hereunder
* * * * may enter into any agreement or
agreements not prohibited by the constitution which may be necessary to obtain such loans, grants or gifts."

Again, in Sec. 8 of the new Act:

"The State Highway Commission shall have authority without further legislative enactment to make such provision for contributions toward maintenance of the project as it may see fit * * * *."

By the same provision, the Highway Commission may contribute highway funds to Galveston County for the County's use in maintaining the tunnel, in lieu of the maintenance of the tunnel by the State with State forces. The County would be performing a governmental function as an agent of the State. A similar performance was upheld in Jefferson County vs. County Board of District Road Indebtedness (Sup. Ct.) 192 S. W. (2d) 908.

However, we do not wish to be understood to be

504

passing upon the validity or constitutionality of the new Act. Since that issue is in the above mentioned injunction suit, we will refrain from passing further upon the validity of the Act until final judgment in the pending case. We will advise you as soon as this issue has been finally settled by the Courts.

If the Act is held to be valid, in order to make such contributions as are proposed by the State Highway Commission to Galveston County for the maintenance of the tunnel, the State Highway Commission should designate and constitute the tunnel as a part of the State Highway System. Otherwise, the tunnel would be strictly a county project, an exclusive undertaking, independent of performing a governmental function for the State. This would fall within the prohibition of Section 51 of Article III of the State Constitution which provides in effect that the Legislature shall have no power to grant or authorize the granting of public moneys to any "individual, association of individuals, municipal or other corporations whatsoever." This view was specifically upheld in the case of Road District No. 4, Shelby County vs. Allred, 123 Tex. 77, 68 S. W. (2d) 164 (Commission of Appeals, opinion adopted by the Supreme Court) where it was held that money granted to the road district and not used for highway purposes was unconstitutional.

From an examination of H. B. 835, it seems apparent that the Legislature has intended that such a project should be a part of the State Highway System, and that both County and State may join in the construction, maintenance and operation thereof. In Section 8, there is specific provision for the Highway Commission to declare the project to be a part of the State Highway System, provided that the property and contract rights in such project and in the bonds are not unfavorably affected thereby. In any event, in Section 8, the Legislature has declared that the project shall become a part of the State Highway System when the bonds and interest have been paid or sufficient amount set aside in a trust fund for the payment of the indebtedness. This view is in harmony with other statutes relating to the State Highway System, 6674q-1; 6674q-4; 6674q-8, V. C. S. These statutes make plain the policy of the State in the improvement, construction, and operation of the State Highway System; that is, to reimburse counties for aid rendered by the counties to the State and for the State Highway Commission to control the State Highway System. It seems that H. B. 835 is consistent with this policy.

In answer to your third question, you are advised that the prohibition contained in Article VIII, Section 6 of the State Constitution would prohibit the State Highway Commission from binding the State and future Commissions by agreement with the County to pay to the County a fixed sum of money from the highway fund each year for a term of more than two years. Section 6 of Article VIII limits every appropriation by the Legislature to a term of two years. Inasmuch as the money to be paid under such agreement with the County would be paid from the highway fund, which depends upon appropriations made by the Legislature every two years, the contract for payment of money will not be binding beyond a period of two years. This is provided for in your proposed draft of contract.

In answer to your fourth question, we have examined the proposed agreement between the Highway Commission and Galveston County, which has been furnished to us by Mr. John Green, and approve said agreement, subject to the following suggestions:

(1)  In the third paragraph on page 1, immediately after the word "Island", add "pursuant to authority granted under House Bill 835, Acts of the Fiftieth Legislature, 1947".

(2)  The second paragraph on page 2 should be re-written in order to conform to the new Act.

(3)  On page 3, in paragraph 1, in the fourth line, immediately after the word "Island", add "on State Highway No. 87". In the same paragraph, in line 6, after the word "be" add the word "possible".

(4)  On page 4, paragraph 3, in the eighth line thereof, substitute the word "be" for the word "become". In the next to the last line of said paragraph 3, eliminate the word "if" and in the place of the word "become" add "be at all times". At the end of the next to the last line of said paragraph 3, eliminate the term "it shall be" and substitute therefor the words "the same", so that the latter part of said paragraph shall read as follows:

"The tunnel shall be a part of the State Highway System and shall be turned over by the County to the State Highway Commission in good repair and operating condition. Provided, however, that said tunnel shall be at all times a part of the State Highway System, the same as any other part of said System and shall be considered as such."

(5) On page 5, in paragraph 2, in the second line thereof, add immediately after the word "tunnel" these words: "and in lieu of such maintenance".

(6) Eliminate all of the provisions of paragraph 6 on page 6.

(7) In addition to the terms of paragraph 7, add the following after the last word in said paragraph: "It is understood and agreed that the State Highway Commission reserves the right to determine the reasonableness and adequacy of the tolls to be collected by the county for the operation and maintenance of the tunnel."

(8) On page 8, eliminate the terms and provisions under paragraph 11. We do not believe that a person selected by the parties to the agreement should make a binding decision on a controversial matter which would be binding upon the State.

(9) Eliminate all of the provisions in paragraph 15 and substitute therefor the following:

"That nothing in this contract is, nor is intended to be, a direct or binding commitment or obligation on the part of the State of Texas or the Highway Commission to pay any amount beyond the end of the current biennium, and this contract shall always be subject to the regular biennium appropriation bill or other Act of the Legislature of Texas. It is understood and agreed that this contract must be renewed and extended every two years thereafter by official action of the State Highway Commission at the First Regular Monthly Meeting of the State Highway Commission following the appointment and

507

qualifying of each new State Highway Commissioner throughout the life of the contract; and if the State Highway Commission in its discretion, at any such meeting of the State Highway Commission, fails or refuses to renew and extend this contract, then in that event, this contract shall thereafter be null and void; and no further payments may be made thereunder to Galveston County by the State Highway Commission. If in the event any provision of this contract conflicts with the provisions of this section (15th), then it is stipulated by the parties hereto that the provisions of this section (15th) of the contract shall prevail."

## SUMMARY

(1)    The Texas Highway Commission and Galveston County, through its Commissioners' Court, are authorized under the provisions of H. B. 835, Fiftieth Legislature, to enter into an agreement providing that the Texas Highway Commission will maintain a proposed tunnel to be constructed between Galveston Island and Boliver Point in Galveston County with its own forces out of the State Highway Fund, while the County operates the tunnel and collects tolls for its use; subject, however, to the validity of the Act being upheld in the case of George A. Prowse, et al, vs. Sam E. Wilson, et al, now pending in the Court of Civil Appeals at San Antonio.

(2)    The Texas Highway Commission may legally contribute highway funds to Galveston County for the County's use in maintaining the proposed tunnel, mentioned above, in lieu of the performance of the maintenance of such tunnel by the State forces; provided, that such tunnel shall be designated and constitute a part of the State Highway System, and subject to the validity of H. B. 835, Fiftieth Legislature, as above mentioned.

(3)    The State Highway Commission is not legally authorized to commit and bind the State and future State Highway Commissions by agreement

with Galveston County to pay the County $200,000.00 each year for the maintenance of the proposed tunnel referred to for a term of more than two years. Article VIII, Section 6, Constitution of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     *Charles E. Crenshaw*

Charles E. Crenshaw
Assistant

CEC/JMc/RT

APPROVED:

*Price Daniel*

ATTORNEY GENERAL