

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

May 20, 1958

Honorable Raymond W. Vowell
Acting Executive Director
Board for Texas State Hospi-
  tals and Special Schools
Austin, Texas

Opinion No. WW-433

Re: Does the Legislature have
    the power to appropriate
    money for the purposes and
    privileges set forth in
    Subsection c, Article II,
    House Bill 133, Acts of the
    55th Legislature and rela-
    ted questions.

Dear Mr. Vowell:

        You have submitted three questions for our opinion.
We quote from your letters of February 27, 1958, and March 11,
1958:

        "Sub-Section c, Article II, House Bill 133
    (appropriations), Acts of the 55th Legislature,
    provides as follows:

        "'c. At the discretion of the respective
    governing boards, employees may be allowed a
    reasonable time without loss of salary to attend
    recognized schools, clinics, or conferences, for
    training purposes. Any regular registration fee
    may be paid out of appropriated funds. No funds
    herein appropriated may be expended for trans-
    portation, meals or lodging for personnel attend-
    ing schools, clinics, or conferences when leave
    from regular duty exceeds 15 calendar days.
    Funds appropriated in this Article may be used
    for other training of personnel when such train-
    ing is deemed necessary by the respective
    governing board.' (Emphasis added)

        "Pursuant to authority contained in this pro-
    vision, Preston E. Harrison, M.D., who was then

Clinical Director at the Big Spring State Hospital,
made application to the Menninger Foundation,
Topeka, Kansas, to attend their School of Mental
Hospital Administration. After being interviewed
by the officials in charge of that course at the
Menninger Foundation, Dr. Harrison was accepted as
a person qualified to attend the school. Dr.
Harrison had been a member of the medical staff at
Big Spring State Hospital since July 1, 1953 and
served that institution in the capacity of Acting
Clinical Director from July 1, 1953 to April 1, 1956,
from April 1, 1956 to May 1, 1957 as Clinical
Director, and from May 1, 1957 to September 1,
1957 as Acting Superintendent, at which time he
reported to the Menninger Foundation to attend the
school. During his attendance at this school, he
has been carried on the payroll as Clinical Direc-
tor at Big Spring State Hospital and his family
has occupied the residence furnished him by that
hospital as emoluments of his office. The school
is to last for nine continuous months. The State
Hospital Board's purpose in allowing Dr. Harrison
to attend this school was to prepare him for the
position of Superintendent of the Big Spring State
Hospital, he being imminently qualified for that
position in all respects except administratively."

"At its meeting on Monday, March 10, 1958, the
Board for Texas State Hospitals and Special Schools
granted Dr. Harrison a leave of absence without
pay from February 1, 1958 through May 31, 1958.

" . . .

"1. Does the Legislature have the power to
appropriate money for the purposes and
privileges set forth in Sub-section c,
Article II, House Bill 133, Acts of the
55th Legislature?

"2. If your answer to question 1 above is in
the affirmative, then is payment of this
salary for the period of time from Sep-
tember 1, 1957 through January 31, 1958
a reasonable time as contemplated by
Sub-section c, Article II, House Bill
133, Acts, 55th Legislature?

"3. If your answer to question 2 above is in the affirmative, is there any legal impediment to Dr. Harrison receiving the emoluments that go with the salary of his office during the aforementioned period of time?"

The answer to your first question is governed by the application of Section 51 of Article III of the Texas Constitution, which is as follows:

"The Legislature shall have no power to make any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; . . . "

It is apparent that the above Article prohibits the Legislature from granting or appropriating public money to any individual, association of individuals, municipal or other corporations. However, the Texas courts have interpreted Section 51, Article III, as not preventing the Legislature from appropriating State funds to an individual, association of individuals, municipal or other corporations if the use and purpose of the appropriation is for the furtherance of the governmental duties of the State. If the appropriation is for a use not related to State governmental duties and functions, such appropriation is a gratuity and invalid. Bexar County v. Linden, 110 Tex. 339, 220 S.W. 760 (1920); Road District No. 4, Shelby Co. v. Allred, 68 S.W.2d 164 (Comm.App., 1934), opinion adopted by the Supreme Court; City of Aransas Pass v. Keeling, 247 S.W. 818, 112 Tex. 339 (1923); Jones v. Alexander, 59 S.W.2d 1083 (Comm.App., 1933), opinion adopted by the Supreme Court; Texas Pharmaceutical Association v. Dooley, 90 S.W.2d 328 (Tex.Civ.App., 1936); Jefferson Co. v. Board of Co. & Dist. Road Indebtedness, 182 S.W.2d 908 (1944).

Accordingly, to the extent that the authorization for the expenditure of appropriated funds for personnel to attend schools, clinics and conferences, etc., for training purposes is directly and substantially related to the performance of the State's governmental functions, we hold Subsection c, Article II, House Bill 133, Acts 55th Legislature, Chapter 385, page 870, to be authorized by the Texas Constitution. A limitation on the Act imposed by the provisions of Section 51, Article III, of the Texas Constitution, is that no governing board may allow State employees and officials to attend schools, clinics or conferences, etc., which bear no substantial

and direct relation to the governmental duties of the State.

In order for us to further answer your opinion request questions 2 and 3, it is necessary to apply the above constitutional limitation to the fact situation that you have presented and determine if the training in question is for the furtherance of the governmental duties of the Board for Texas State Hospitals and Special Schools.

In reviewing past Attorney General's Opinions on the same question of training of governmental personnel, it is noted that the following rules have been consistently applied to determine whether the training was such that the State could pay for it. The question asked is whether the training described will be directly and substantially used to facilitate the governmental duties and functions of the State agency requesting such training. Also, do the facts establish that there is a reasonable, substantial and direct relationship between the purpose of the training and the accomplishment of the governmental functions entrusted to the employee? (Attorney General's Opinion No. WW-83, April 1, 1957, Insurance Commission employee training at I.B.M. school, 2-week course; Attorney General's Opinion No. WW-223, September 12, 1957, Department of Public Safety employee pilot training in flight proficiency training program; Attorney General's Opinion No. S-209, July 20, 1956, Secretary of State employee training at I.B.M. school, 4-day course; Attorney General's Opinion No. R-2128, Department of Public Safety employee training in Police Administration at Northwestern University, 4½-month course).

In applying the above rules to the fact situation that you have presented, it is our opinion that the training provided Dr. Harrison will be directly and substantially used to facilitate the administration of the governmental duties of the Board for Texas State Hospitals and Special Schools. As you have stated in your letter, the purpose of sending Dr. Harrison to the Menninger Foundation was to receive a course in Mental Hospital Administration and that the purpose of such training was to better enable Dr. Harrison to carry out the duties of administrator of the Big Spring State Hospital. The efficient administration of the Big Spring State Hospital in receiving, treating and caring for the mentally ill people of Texas is a governmental duty and function of the Board for Texas State Hospitals and Special Schools. The training in question, Mental Hospital Administration, bears a reasonable, substantial and direct relationship to such governmental duties and functions. It is our further opinion that the

period of training from September 1, 1957, through January 31, 1958, is a reasonable time within the meaning of Subsection c, Article II, House Bill 133, Acts of the 55th Legislature. Therefore, in answer to your questions 2 and 3, it is our opinion that Dr. Harrison is authorized by Subsection c, Article II, House Bill 133, Acts of the 55th Legislature, to receive payment of his salary and all emoluments that go with the salary during the period of time from September 1, 1957, through January 31, 1958; and such payment is not in violation of Section 51, Article III, Texas Constitution.

## SUMMARY

Subsection c, Article II, House Bill 133, Acts 55th Legislature, Regular Session, 1957, to the extent this Section purports to authorize training and schooling of State officials and employees of a nature directly related to the performance of the State's governmental duties, is a valid grant, and is constitutional under the provisions of Section 51 of Article III of the Texas Constitution; but to the extent it purports to authorize schooling not directly and substantially related to the performance of the State's governmental duties, is unconstitutional under the provisions of Section 51, Article III of the Texas Constitution. Under the facts submitted, the training of Dr. Preston E. Harrison in the course of Mental Hospital Administration at the Menninger Foundation, Topeka, Kansas, is related substantially and directly to the performance of the State's governmental duties, and payment of his salary and receipt of all emoluments that go with the salary of his office for

the period of time from September 1, 1957, through January 31, 1958, are constitutional and authorized by the provisions of Subsection c, Article II, House Bill 133, Acts of the 55th Legislature.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Richard B. Stone
Richard B. Stone
Assistant

RBS:pc:jl

APPROVED:

OPINION COMMITTEE
Morgan Nesbitt, Chairman

Lawrence Jones

Wallace Finfrock

REVIEWED FOR THE ATTORNEY GENERAL
BY:  J. C. Davis, Jr.