

# THE ATTORNEY GENERAL
## OF TEXAS

December 29, 1986

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Oscar H. Mauzy
Chairman
Committee on Jurisprudence
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No. JM-597

Re: Legality under article 6252-9f, V.T.C.S., of political campaign activities by community college students as optional course work assignment

Dear Senator Mauzy:

You request an opinion about the application of article 6252-9f, V.T.C.S., which prohibits state employees from engaging in certain political activities, to political campaign activities undertaken by community college students as an optional assignment in a government course. Article 6252-9f, V.T.C.S., provides in part:

> Sec. 2. Except as expressly prohibited by this Act, a state employee has the full rights of freedom of association and political participation guaranteed by the state and federal constitutions.
>
> Sec. 3. (a) A state employee may not:
>
> (1) use official authority or influence or permit the use of a program administered by the state to interfere with or affect the result of an election or nomination of a candidate, or to achieve any other political purpose; or
>
> (2) coerce, attempt to coerce, command, restrict, attempt to restrict, or prevent the payment, loan, or contribution of any thing of value to a person or political organization for a political purpose.
>
> (b) For purposes of this section, a state employee does not interfere with or affect the results of an election or nomination if the employee's conduct is permitted by a law relating to his office or employment and is not otherwise unlawful.

Sec. 4. A state employee who violates Section 3 of this Act is subject to immediate termination of employment.

You enclose a memo written by the attorney of a public community college which states that section 3 of article 6252-9f, V.T.C.S., brings into question the practice of allowing students to work in political campaigns as optional assignments in government courses. The memo recommends that no candidate or political party should have a disproportionate number of students from a class working in a campaign -- that is, an approximately equal number of students should work for each of two candidates running for the same office. Your two questions are directed at this recommendation:

Does the prohibition against certain political activity by state employees in article 6252-9f, section 3(a)(1) in turn limit the freedom of a student in a state-supported school's government class to choose a particular political campaign to work for when attaining credit in an internship program?

If not, does article 6252-9f, section 3(a)(1) prohibit a teacher or school administrator from specifying a particular campaign, or from allocating students at random, more or less equally among competing campaigns, i.e., would such an allocation method constitute . . . 'use [of] official authority or influence . . . to interfere with or affect the result of an election or nomination of a candidate?'

Before we can reach questions about how such internship programs may be conducted, we must deal with the threshold issue: Whether section 3(a) of article 6252-9f, V.T.C.S., absolutely prohibits teachers, administrators, and other employees of state supported schools from offering optional course work which involves student participation in political campaigns. We turn to an examination of article 6252-9f, V.T.C.S., and the prohibitions of section 3 of that statute.

The legislature enacted article 6252-9f, V.T.C.S., in 1983 as Senate Bill No. 762. Acts 1983, 68th Leg., ch. 579, at 3763. The bill was recommended by the Public Servant Standards of Conduct Advisory Committee established by the Sixty-seventh Legislature. Acts 1981, 67th Leg., ch. 151, at 370. The Advisory Committee stated in its final report that Senate Bill No. 762 removed the existing restrictions on political activity of state employees, except for employees of the Department of Public Safety, and outlines the extent to which all employees may participate in political activity. Final Report of the Public Servant Standards of Conduct Advisory Committee

at IA (August 1983). The report expressed the opinion that the United States Constitution protected political activity of public employees to the extent that the activity occurs outside of office hours and does not involve official duties or entail use of state property. Background Report on Proposed Changes to Law Concerning Political Activity of State Employees, completed in Final Report of the Public Servant Standards of Conduct Advisory Committee at IB (August 1983); see generally, Buckley v. Valeo, 424 U.S. 1 (1976); Broadrick v. Oklahoma, 413 U.S. 601 (1973); Attorney General Opinion MW-243 (1980) (Broadrick raised but did not answer questions as to whether First Amendment protected employee in wearing campaign button off duty). The Advisory Committee noted that

> [t]raditionally, the need to protect employees from coercion by supervisors has been mentioned as justification for prohibition of political activity. Also the state may impose some restraint on the political activities of its public employees in order to promote efficiency and integrity in public service. Nevertheless, subcommittee and full committee members felt that the underlying basis for the statutory restrictions is removed when the public employee is not on duty or performing his official duties or utilizing state property.

Final Report of the Public Servant Standards of Conduct Advisory Committee at IA; but see United Public Workers of America v. Mitchell, 330 U.S. 75 (1947).

Thus, a major purpose of Senate Bill No. 762 was to remove restrictions on political activity of public employees. In addition, since state employees had no clearly outlined guide to participation in political activity, Senate Bill No. 762 also sought to outline the extent to which they might participate in political activity. Bill Analysis to S.B. No. 762, prepared for Senate Committee on State Affairs, filed in Bill File to H.B. No. 762, Legislative Reference Library. Section 3, in language that tracks provisions of the federal Hatch Act applicable to certain state employees, outlines the limits on a state employee's political activity. See 5 U.S.C. §§1501, 1502 (Hatch Act prohibitions applicable to state employees principally employed in connection with a federally financed activity); Hum. Res. Code §21.009 (DHR employees subject to Hatch Act); Attorney General Opinion MW-149 (1980) (DPS employees subject to Hatch Act).

The political activity forbidden by section 3 of article 6252-9f, V.T.C.S., was not necessarily permitted conduct before that statute became effective. Article III, section 51, of the Texas Constitution prohibits the legislature from using public funds for a nongovernmental purpose. Road District No. 4, Shelby County v. Allred,

68 S.W.2d 164 (Tex. 1934); see State v. City of Dallas, 319 S.W.2d 767 (Tex. Civ. App. - Austin 1959), aff'd, 331 S.W.2d 737 (Tex. 1960); see also Tex. Const. art. III, §52 (similar prohibition applicable to political subdivisions); Tex. Const. art. XVI, §6 (no appropriation for private purposes). Numerous Attorney General Opinions disapprove attempts to divert public funds and other public resources to private purposes. See, e.g., Attorney General Opinions JM-30 (1983) (state funds may not be used to provide private individuals with telecommunications devices for the deaf); MW-532 (1982) (grant of state funds to private landowners to reforest idle lands); MW-89 (1979) (school district policy permitting teachers to work for professional associations while receiving salaries from the school district is unconstitutional); MW-36 (1979) (county may not spend public funds to purchase and mail Christmas cards); MW-22 (1979) (state funds may not be granted to private individuals to pay their utility costs); M-661 (1970) (county may not donate funds to a private charity). Other provisions of law already prevent a public employee from using his official position to benefit himself in his private capacity. See Penal Code ch. 39 (abuse of office); V.T.C.S. art. 6252-9b, §§6, 8 (provisions guarding against state officer or employee being influenced by private interest). As Justice Douglas said in dissenting to a Supreme Court opinion that upheld the Hatch Act against challenges that it violated employees' First Amendment rights and that it was void for vagueness,

> no one could object if employees were barred from using office time to engage in outside activities whether political or otherwise.

United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 597 (1973).

Thus, sections 3(a)(1) and 3(a)(2) of article 6252-9f do not prohibit conduct that was formerly permissible under Texas law. These provisions do expressly inform state employees that they may not divert state resources to private political interests or direct their official authority to serving such interests; violation of these provisions subjects them to termination. If the college course work you describe involves violations of section 3, article 6252-9f, V.T.C.S., it probably was also impermissible under prior law.

We thus turn to a central question: whether the community college personnel who are responsible for offering the optional course work assignments you describe have violated section 3(a)(1) of article 6252-9f, V.T.C.S. This section provides that a state employee may not

> use official authority or influence or permit the use of a program administered by the state to interfere with or affect the result of an election

> or nomination of a candidate, or to achieve any
> other political purpose. . . .

V.T.C.S. art. 6252-9f, §3(a)(1). An employee of a public junior
college is a "state employee" within section 3(a)(1). See V.T.C.S.
art. 6252-9f, §(1)(B), (2); Educ. Code §61.003(2), (7).

Community college courses are reviewed by the Coordinating Board,
Texas College and University System, before they are offered.
Community colleges offer both university-parallel programs and
occupational programs. Educ. Code §130.005. A community college
course of study in freshman and sophmore college work must be
submitted to the Coordinating Board, Texas College and University
System, for approval before it is offered. Educ. Code §130.004; see
Educ. Code §130.005 (public junior colleges renamed "community
colleges"). The board of trustees of a community college must each
year submit to the Coordinating Board a comprehensive list of all
courses, with a description of content and scope, to be offered the
following year. Educ. Code §61.052. The Coordinating Board may order
a deletion or consolidation of any courses as submitted. Id.; Educ.
Code §§61.053-61.054; see Educ. Code §§61.060-61.063 (Coordinating
Board authority over community colleges). See also Educ. Code
§§51.301-51.302; Attorney General Opinion M-143 (1967) (courses must
be offered in American history and government). The governing body of
the community college may offer government courses subject to the
statutory requirements and Coordinating Board review already
described. See Educ. Code §§130.002, 130.084; see also Educ. Code
§23.26. The governing body of the community college also has
authority to hire and supervise employees to teach the course
offerings.

In our opinion, article 6252-9f does not prohibit community
college employees from authorizing and offering optional assignments
which involve student work for a political campaign. We cannot
provide comprehensive guidelines for offering internship assignments;
that is within the discretion of the community college trustees and
the Coordinating Board. We can, however, point out some essential
restrictions.

The assignments must be designed to carry out the educational
purposes of the course and of the community college. The course
presumably will go through the approvals required by the Education
Code, and the instructor, in exercising his authority delegated by the
college trustees, will design and direct the assignments to carry out
the educational purposes of the institution. The instructor and other
employees responsible for this program must not allow their political
preferences to influence the operation of the program; decisions about
such optional assignments must be based on the educational benefit to
the student, and not consider the benefit or detriment to the
political entity. If the assignments are conducted to fulfill the

educational purposes of the college, and if any effect they may have on the political campaign is entirely incidental and minimal in degree, the instructor and other responsible college employees will not, in our opinion, violate section 3(a)(1) of article 6252-9f, V.T.C.S.

You ask whether a government student may be assigned to participate in a particular campaign against his will. You have characterized the internship assignments as optional. Presumably, no student is required to participate in an internship at all, and students may complete that segment of the course work by preparing some other type of assignment. Moreover, section 3(a)(2) prohibits a state employee from coercing the "contribution of any thing of value . . . to a political organization for a political purpose." This prevents a teacher from "coercing" a student to contribute his services to a political organization for a political purpose.

## S U M M A R Y

Section 3(a)(1) of article 6252-9f, V.T.C.S., does not absolutely prohibit a community college from offering as course work in a government class an optional assignment which involves student participation in a political campaign. Section 3(a)(2) of the statute prevents a teacher from "coercing" a student to contribute his services to a political organization for a political purpose.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General