CITY OF ARANSAS PASS ET AL. V. W. A. KEELING, ATTORNEY-GENERAL.

No. 3867. Decided January 24, 1923.

(247 S. W., 818.)

1.—Constitutional Law—Title of Act—Donation of State Taxes to Municipality.

The subject of an Act donating to a municipality for a term of years a portion of the "state *ad valorem* taxes" to aid in the construction by it of sea-walls was sufficiently expressed in its title describing it as donating such proportion "of *ad valorem* taxes collected on property and from persons" in the county for the period and purposes specified. Doeppenschmidt v. International & G. N. Ry. Co., 100 Texas, 536, followed. (p. 345).

2.—Constitutional Law—Granting Public Funds to Municipality.

The donation to a city of a portion of the State taxes collected in its county during a term of years to aid in the construction of sea-walls is not a grant of public money for a purpose forbidden by article 3, section 51, of the Constitution. The destruction of ports through which moves the commerce of the State is a state-wide calamity; and sea-walls on the coast, though of special benefit to particular communities, promote the general welfare of the State. Providing against same is a proper function of the State; and the use of cities or counties as agents of the State in the discharge of its duty is not forbidden by the Constitution. Bexar County v. Linden, 110 Texas, 344; City of Galveston v. Posnainsky, 62 Texas, 127; Weaver v. Scurry County, 28 S. W., 836; followed. (p. 345).

3.—Constitutional Law—Lending State's Credit.

The grant of State taxes to a municipality to aid it in the protection of a commercial port by applying the proceeds to a sinking fund for its bonds issued for that purpose was the discharge of a State obligation; the State did not thereby lend its credit nor guaranty payment of the bonds; and the grant was not in violation of article 3, section 50, of the Constitution forbidding its so doing. (p. 346).

### 4.—Constitution—Aid in Construction of Sea-Walls—Appropriation Beyond Two Years.

Aid by the State to the construction of sea-walls by counties and cities on the coast is expressly authorized by article 11, section 8, of the Constitution. Construed in connection with related provisions (art. 8, sec. 10; art. 3, sec. 51) the State is not restricted thereby to aid by grants from the public domain. Nor was it limited, in extending such aid, by article 8, section 6, of the Constitution, forbidding appropriations of public money for a longer period than two years. (pp. 346, 347).

### 5.—Municipal Bonds—Provision for Payment.

The amounts and dates of maturity of an issue of municipal bonds, and the assessed values and tax levy of the municipality are considered, and *held* sufficient, in connection with the State taxes granted to the municipality for that purpose, to provide for meeting the interest and sinking fund required for their payment, and to warrant approval of their issuance. (pp. 347-349).

### 6.—Same—Levy of Taxes.

The actual levy by city authorities of an adequate tax is not essential to comply with the constitutional provision (art. 11, sec. 7) where the law itself under which municipal bonds are issued mandatorily requires an adequate tax levy. Mitchell County v. City Natl. Bank of Paducah, 91 Texas, 371, followed. (p. 349).

### 7.—Same—Aid Granted by State—Withdrawal.

The provision for payment of a proposed issue of municipal bonds was not rendered inadequate because an essential part thereof,—a grant by the State of state taxes for a term of 20 years in aid of their payment,—was subject to withdrawal by repeal of the law. The State, by authorizing the issue of bonds and creating a fund for their payment, entered into the contract between the debtor and the holders of the bonds which it could not impair by subsequent legislation without substitution of something of equal efficiency. City of Austin v. Cahill, 99 Texas, 195, and other cases followed. (p. 349).

Original application to the Supreme Court by the City of Aransas Pass and its Mayor for writ of mandamus against W. A. Keeling, Attorney-General, to compel him to approve municipal bonds.

*W. P. Dumas,* for relators.

The act granting and donating eight-ninths (8/9) the net amounts of the State ad valorem taxes collected in San Patricio County is not violative of Article 3, Section 35, of the Constitution, on account of the word "State" not appearing in its title. Newnom v. Williamson, 103 S. W., 656; Doeppenschmidt v. Railway Co., 100 Texas, 534; Cattle Co. v. Baker, 56 S. W., 756.

The generality of the title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. Floeck v. State, 30 S. W., 794; Albrecht v. State, 8 Cr. App., 216; Nichols v. State, 32 Cr. App., 403; 23 S. W., 680; Fahey v. State, 27 Cr. App., 158, 11 S. W., 108; Joy v. City of Terrell, 138 S W., 215.

Mistakes or slight omissions, in the caption of a law, where no one has been misled or surprised, will not vitiate the law. State v. McCracken, 42 Texas, 383.

Courts have nothing to do with the wisdom or the policy of a law; these are matters purely of legislative cognizance. 36 Cyc. 1103; Rossmiller v. State, 114 Wis., 169, 89 N. W., 839, 91 Am. St. Rep., 910, 58 L. R. A., 93; Commonwealth v. Fowler, (Ky) 28 S. W., 786-789.

The contemporaneous practical construction placed upon a law by those charged with its administration and those affected by its operation is to be considered. State v. McAllister, 31 S. W., 187; McQuistion v. Fenet, 144 S. W., 1155 (reversed in 147 S. W. on other grounds); In re Valhoff, 238 Fed., 405; State v. Railway Co., 209 S. W., 820-825; Tolleson v. Rogan, 96 Texas, 432, 73 S. W., 524.

The Legislature needs no specific constitutional authority for its enactments. State v. Board of Curators, 268 Mo., 598, 188 S. W., 128; Ensley Development Co. v. Powell, 40 So., 137, 147 Ala., 300; People v. Comstock, 78 N. Y., 356; State v. Hockett, 70 Iowa, 442, 30 N. W., 742; 12 Corpus Juris, 748-749.

The true and only test of the validity of a statute which the court can properly apply is whether it be in express terms or by clear implication forbidden by the Constitution, and, if there be a doubt on the subject, it is the duty of the court to resolve that doubt in favor of the validity of the statute. Purnell v. Mann (Ky.), 48 S. W., 407; People v. Comstock, 78 N. Y., 356; National Council, J. O. U. A. M., v. State Council, J. O U. A. M., 51 S. E., 166; In re Watson, 97 N. W., 463; Bertholf v. O'Reilly, 74 N. Y., 509, 514.

If possible, that construction will be adopted which will promote the public interests and accord with sound economic policy. State v. DeGress, 72 Texas, 242, 11 S. W., 1029; City of Austin v. Cahill, 99 Texas 172, 88 S. W., 542; Miller v. Tod, 95 Texas, 404, 67 S. W., 483.

When a law is in its nature a contract, and absolute rights have vested under that contract, a repeal of the law cannot divest those rights. Fletcher v. Peck, 6 Cranch, 87; Green v. Biddle, 8 Wheaton, 92; Rice v. Minnesota & N. W.. R. Co., 66 U. S., 358, 17 L. Ed., 147; Trustees of the Bishop's Fund v. Rider, 13 Conn., 87; Providence Bank v. Billings, 29 U. S. (4 Pet.) 514; 7 L. Ed., 939; Woodruff v. State, 3 Ark. (3 Pike) 285; Winter v. Jones, 10 Ga., 190; 54 Am. Dec., 379; Baldwin v. Commonwealth, 74 Ky. (11 Bush) 417, 419; Baltimore Trust & Guaranty Co. v. City of Baltimore, 64 Fed., 153.

When municipalities, under competent authority, have contracted debts, the creditors have a right to rely upon this power for their security, and it cannot afterwards be so far restricted as to prejudice their demands, since to do so would impair the obligation of a contract. Vance v. Little Rock, 30 Ark., 435, 440; State v. New

Orleans, 37 La. Ann., 13; Sawyer v. Concordia, 12 Fed. 754; Cooley on "Taxation," (3rd Ed.) pp. 121-585; McQuillin on "Municipal Corporations," Vol. 5, Sec. 2373; Hawesville Board of Education v. Louisville, H. & St. L. Ry. Co. 110 Ky., 932, 62 S. W., 1125; United States v. Quincy, 4 Wall., 535, 18 L. Ed., 403; Welch Water Co. v. Welch, 62 S. E., 497.

Laws which subsist at the time and place of making a contract, and where it is to be performed, *enter into and form a part of it,* as if they were expressly referred to or incoporated in its terms. Von Hoffman v. City of Quincy, 4 Wall., 550; Walker v. Whitehead, 16 Wall., 317; Barnitz v. Beverly, 163 U. S., 125; Gelpcke v. City of Dubuque, 68 U. S., 206; Havemeyer, v. Iowa County, 70 U. S., 303; Taylor v. Ypsilanti, 105 U. S., 60; Douglass v. County of Pike, 101 U. S., 677; Fletcher v. Peck, 6 Cranch, 87.

*W. A. Keeling,* Attorney-General, and *C. F. Gibson,* Assistant, for respondent.

The City of Aransas Pass, not having sufficient valuation, could not levy a tax sufficient to pay the interest and provide two per cent as a sinking fund, and not having any control over rate fixed for State ad valorem tax, could not comply with this provision of the Constitution.   Constitution, Art. 11, Sec. 7; Mitchell Co. v. City National Bank, 91 Texas, 361, 43 S. W., 880; City of Terrell v. Dessaint, 71 Texas, 770, 9 S. W., 593; Citizens Bank v. City of Terrell, 78 Texas, 450, 14 S. W., 1003; Biddle v. City of Terrell, 82 Texas, 335, 18 S. W., 691; McNeal v. City of Waco, 89 Texas, 83, 33 S. W., 322; Howard v. Smith, 91 Texas, 8, 38 S. W., 15; City of Austin v. Cahill, 99 Texas, 172, 88 S. W., 542; Ault v. Hill Co., 116 S. W., 359.

It seems that something has been omitted in the title of this Act, inasmuch as it does not designate what ad valorem tax is to be donated.   By reading the title solely it cannot be ascertained whether it is the State ad valorem tax or the county ad valorem tax that is to be given to the city.   It is questionable whether this might not be violative of Section 35 of Article 3 of the Constitution which provides that no bill shall contain more than one subject which shall be expressed in its title.

Furthermore, Section 6 of Article 8, of the Constitution, provides that no appropriation of money shall be made for a longer period of time than two years.   This Donation Act clearly undertakes to appropriate State ad valorem taxes to be collected in said counties for a period of twenty years, the proceeds thereof to be used in paying the interest on and creating the sinking fund to pay bonds issued for the purpose of building a sea wall.   We think that the Legislature would not have authority to do indirectly that which the Con-

stitution prohibits it from doing directly, and that the appropriation of State ad valorem taxes is clearly a donation of State revenue and the fact that it is donated to the City of Aransas Pass before it is placed in the State Treasury does not alter the fact that it is a donation by the Legislature of State revenue. It is also apparent that this is contrary to the provision of the Constitution, in that it appropriates money for a longer period than two years. Any succeeding Legislature could repeal this law. Lewis' Sutherland Statutory Construction, Volume 1, 2nd Ed., Section 244.

The City of Aransas Pass, not having made provision by levying a tax sufficient pay the interest and provide a sinking fund for these bonds, must depend upon the Donation Act hereinabove referred to. If this Act is unconstitutional, the bonds are void. If a subsequent Legislature can repeal this Donation Act, the bonds are void.

We submit that said Chapter 22, Acts 36th Legislature, 3rd Called Session; is violative of the provisions of Section 50, of Article 3, of the Constitution, which provides that the Legislature shall have no power to give or to lend or to authorize the giving or lending of the credit of the State in aid of or to any person or association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever for the payment of the liabilities present or prospective of any individual, association of individuals, municipal or other corporation whatsoever.

It may be contended by plaintiff that the donation provided for in said Chapter 22, known as the Donation Act, is authorized by the provisions of Section 8, of Article 11, of the Constitution. But, in order to make this section of the Constitution applicable, it will be necessary to construe the words "Public Domain" to mean "Advalorem Taxes." We think the words are not susceptible of this definition. "Public Domain" is defined by Webster to be "the territory belonging to a state or general government; Public Lands. This is the general signification of the words according to the approved usuage of the language. The idea of 'Public Domain' excludes that of private ownership." State v. Cunningham, 90 Pac., 755; 35 Mont. 547; Words and Phrases, 2nd Series, Volume 4. "The term 'Public Domain' in its broadest sense comprehends all lands and waters in the possession or ownership of the United States and including lands owned by the several states as distinguished from lands possessed by private individuals or corporations." Winters v. United States, 143 Fed., 740; Bexar County v. Linden, 205 S. W. 478.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

This suit is brought by the City of Aransas Pass and by the Mayor of said City, against the Attorney General of the State of Texas,

for a mandamus to compel the approval of bonds, issued by the City in the principal sum of $213,000.00.

The Thirty-sixth Legislature, at its third called session, passed an act, which became effective on September 17, 1920, entitled "An Act to aid the City of Aransas Pass in constructing and maintaining seawalls, breakwaters and shore protections in order to protect said city from calamitous overflows, by donating to it the eight-ninths (8/9) of ad valorem taxes collected on property and from persons in San Patricio County for a period of twenty years, providing a penalty for the misapplication of the moneys thus donated and declaring an emergency."

By the act, the State donated and granted to the City of Aransas Pass, for a period of twenty years, commencing on September 1, 1920, eight-ninths (8/9) the net amounts of the State ad valorem taxes to be collected upon the property and from persons in San Patricio County, made proper provision for the collection, audit, and division of such state taxes, authorized the issuance of bonds by the City to procure money to be used exclusively to construct and maintain seawalls, breakwaters, and shore protections, in order to avert from the City calamitous overflows, and declared that the eight-ninths of the state taxes donated to the City should be held in trust and applied to create a sinking fund for the redemption of the bonds and to pay the interest thereon. The emergency clause recited that the City shipping district was only a few feet above sea level, and that the hurricanes of 1916 and 1919 had demonstrated that, without protection, lives and property within the City were in imminent danger of destruction. (Ch. 22, General Laws 36th Legislature, 3rd Called Session.)

On October 5, 1920, the Board of Commissioners of the City of Aransas Pass adopted an ordinance providing for an election to be held on November 9, 1920, to determine whether the City should be authorized to issue its seawall bonds bearing 6% per annum interest, payable in stated installments on April first of each year from 1921 to 1940, both included, and whether the City should annually levy a tax of 35 cents on each $100 of taxable values within the City, to supplement the amount donated by the State, in order to pay interest on the bonds and to provide a sinking fund for their retirement at maturity.

The bonds were authorized, on November 9, 1920, by unanimous vote of the resident tax-paying voters of the City, the result of the election was declared, and the City's bonds, in the principal sum of $213,000.00, were directed to be issued. The regularity of the proceedings under which the bonds were issued is not questioned, save that the validity of the act undertaking to donate part of the state taxes is challenged, and save that it is denied that proper provision was made to pay the principal and interest of the bonds.

The Attorney General urges that the donation act is unconstitutional and void for the following reasons:

First: That the act violates Section 35, of Article 3 of the Constitution, providing that no bill shall contain more than one subject which shall be expressed in its title, in that it cannot be ascertained from the act's title what ad valorem taxes were donated.

Second: That the act violates Section 51, of Article 3 of the Constitution, denying power to the Legislature to make any grant of public money to a municipal corporation.

Third: That the act violates Section 50, of Article 3 of the Constitution, prohibiting the Legislature from lending the credit of the State to a municipal corporation or from pledging the State's credit for payment of the present or prospective liabilities of such ·corporation.

Fourth: That the act violates Section 6, of Article 8 of the Constitution, forbidding the appropriation of money for a longer period of time than two years, in that the act undertakes to appropriate state taxes to be collected in San Patricio County ·for a period of twenty years.

The title to the act being plainly sufficient to give reasonable notice to the members of the Legislature that the donation or grant was of state ad valorem taxes was not obnoxious to Section 35, of Article 3. Doeppenschmidt v. International & G. N. .R. R. Co., 100 Texas, 536, 101 S. W., 1080.

The act makes no grant of public money as forbidden by Section 51, of Article 3 of the Constitution. The State here bestows no gratuity. The people of the State at large have a direct and vital interest in protecting the coast cities from the perils of violent storms. The destruction of ports, through which moves the commerce of the State, is a state-wide calamity. Hence, seawalls and breakwaters on the' Gulf coast, though of special benefit to particular communities, must be regarded as promoting the general welfare and prosperity of the State. It is because of the special benefits to particular cities and counties that special burdens on property within their boundaries, through taxation, are justified. But, the State, in promoting the welfare, advancement, and prosperity of all her citizens, or in aiding to avert injury to her entire citizenship, cannot be regarded otherwise than as performing a proper function of state government. Cities or counties furnish convenient and appropriate agencies through which the State may perform duties resting on the State, in the performance of which the cities or counties have a special interest. The use of the cities or counties as agents of the State in the discharge of the State's duty is in no wise inhibited by the Constitution in Section 51, of Article 3. Bexar County v. Linden, 110 Texas, 344 to 348, 220 S. W., 761; City of Galveston v. Posnainsky, 62 Texas, 127, 50 Am. Rep., 517; Weaver v. Scurry County, 28 S. W., 836.

To the extent that the State aids in protecting Aransas Pass from the menace of storms, though the grant of part of the state taxes, she discharges a state obligation, and hence no question arises as to lending or pledging the State's credit to a municipal corporation or for payment of the liabilities of such a corporation. Under the legislative act, the City of Aransas Pass alone issues and promises to pay the bonds. While the State undertakes to aid Aransas Pass to meet the bonds by granting the City certain taxes, yet the State does not guarantee payment of the bonds. The State's credit is in no wise involved. The State's obligation is completely discharged by surrendering to the proper officials of the City ⅝ of San Patricio County's state taxes for twenty years. This obligation, as already shown, is one assumed and performed in the interest of the people of the whole State. The act is not repugnant to Section 50, of Article 3.

We have concluded that Section 8, of Article 11 of our Constitution expressly authorized the Legislature to grant such aid to the counties and cities on the gulf coast, in the construction of sea walls and breakwaters, as was extended to Aransas Pass. The section reads: "The counties and cities on the gulf coast being subject to calamitous overflows, and a very large proportion of the general revenue being derived from those otherwise prosperous localities, the Legislature is specially authorized to aid, by donation of such portion of the public domain as may be deemed proper, and in such mode as may be provided by law, the construction of sea walls, or breakwaters, such aid to be proportioned to the extent and value of the works constructed, or to be constructed, in any locality." While these words admit of the interpretation that state aid to these works was to be extended only by donation of the public domain in a mode to be determined by the Legislature, yet they are obviously as susceptible of the meaning that the Legislature was empowered to extend state aid both by donation of public domain and in any different manner adopted by the Legislature. Viewed in the light of other related constitutional provisions, we have no doubt that the latter is the true meaning to be ascribed to the section. The express wording of the section recognizes a state interest and a state obligation in the protection of coast settlements from calamitous overflows. It must have been known that before many years the public domain would be exhausted. It would be unreasonable to assume that the framers of the Constitution did not intend to make it possible for the Legislature to discharge an obligation which would be just as binding after as before the exhaustion of the public domain. The provision for state aid immediately follows provision for the construction by coast cities and counties of sea walls and breakwaters through taxation and bond issues. By Section 10, of Article 8, the Legislature

was expressly empowered to entirely release state and county taxes "in case of great public calamity." Can sound reasons be given for asserting that it was intended to authorize the State to extinguish all obligations in certain subdivisions of the State for the payment of state and county taxes, for such period as the Legislature might deem necessary, because of great public calamity, and yet not allow relief to the sufferers from such calamity and benefit to all the people of the State through the utilization of the same taxes in building protective works? Any doubt as to the intent of the Constitution to authorize the grant of public money, in case of public calamity is removed by the language of original Section 51, of Article 3 of the Constitution. For it expressly provided that the denial to the Legislature of the power to make "any grant of public money" should "not be so construed as to prevent the grant of aid in case of public calamity." Keeping in mind these related provisions of the Constitution, it seems clear to us that it was the design of Section 8, of Article 11, when it was adopted, to empower the Legislature to give the State's aid, by grant of the public domain or state taxes, or in any other appropriate manner, to the construction by coast cities and counties, through bond issues, of protective sea walls and breakwaters; and, that in the exercise of this power the Legislature was not limited by the terms of Section 6, of Article 8, forbidding the appropriation of public money for a longer period than two years.

Respondent advances two propositions in support of the denial that proper provision was made for the payment of the funds, viz:

First: That the tax levied by the City of Aransas Pass is insufficient to pay even the interest, and, that the amount to be derived from 8/9 of the state taxes in San Patricio County, during twenty years, lacks requisite certainty.

Second: That the State could repeal the donation act, leaving no provision whatsoever to meet the bonds save the City's totally inadequate tax levy.

The admitted facts are that the principal of the bonds will mature as follows:

$ 7,000.00 on April 1st, 1923;
  7,000.00 ''  ''  ''  1924;
  8,000.00 ''  ''  ''  1925;
  8,000.00 ''  ''  ''  1926;
  8,000.00 ''  ''  ''  1927;
  9,000.00 ''  ''  ''  1928;
10,000.00 ''  ''  ''  1929;
10,000.00 ''  ''  ''  1930;
11,000.00 ''  ''  ''  1931;
11,000.00 ''  ''  ''  1932;

$$
\begin{array}{lllll}
12,000.00 & '' & '' & '' & 1933; \\
13,000.00 & '' & '' & '' & 1934; \\
14,000.00 & '' & '' & '' & 1935; \\
15,000.00 & '' & '' & .'' & 1936; \\
16,000.00 & '' & '' & '' & 1937; \\
17,000.00 & '' & '' & '' & 1938; \\
18,000.00 & '' & '' & '' & 1939; \\
19,000.00 & '' & '' & '' & 1940.
\end{array}
$$

The bonds bear interest at the rate of 6% per annum. The City tax of 35 cents on the $100 of the current taxable values of Aransas Pass will produce $3984. The present state tax rate is 35 cents on the $100 in valuation of the taxable property in the State. Eight-ninths of the present state tax rate on current taxable values in San Patricio County will produce $25,512. It thus appears that the levy by Aransas Pass is ample to supplement eight-ninths the state taxes in San Patricio County at the present rate of state taxation. The bonds were voted and will be issued not on the City tax levy alone but on both such levy and the grant of 8/9 of the state taxes from San Patricio County. With both these sources of money available we do not feel warranted in holding that reasonable provision has not been made for the payment of the bonds. Instead, it seems to us that all has been done, in the way of supplemental tax levy, that could in reason be required to assure the prompt payment of the bonds, principal and interest, as they mature.

In most bond issues there is an element of uncertainty as to the maintenance of subsisting taxable values. That element of uncertainty is here somewhat reduced, in that the expenditure of the bond issue ought to enhance the values of the property to be protected from the previous imminent storm peril. It is true that there is uncertainty as to the rate of future levies of state taxes. But, such levies at substantially reduced rates would furnish adequate supplements to the levy made by the City. Besides, it is not pretended that the City, by availing itself of the maximum rate, could not meet any reduction in the state rate within the bounds of reasonable probability.

It is settled that the actual levy by city authorities of an adequate tax is not essential to comply with the constitutional provision, where the law itself, under which municipal bonds are issued, mandatorily requires an adequate tax levy. As declared in Judge Brown's good opinion in Mitchell County v. City Natl. Bank, 91 Texas, 370, 43 S. W., 883, and expressly sanctioned by the Supreme Court of the United States in Wade v. Travis County, 174 U. S., 506, 43 L. Ed., 1060: "What the Constitution requires is that provision shall be made at the time *or shall have been previously made*, by which the tax to be levied is so definitely fixed—as was done in the case last cited—that it becomes merely a ministerial act to determine the rate

to be levied. *The Legislature has the power to make all such "provision" for counties and cities,* or it may leave it to the officers of such corporations to make it when the debt is created; *if made by either it is sufficient."*

The Legislature made it the mandatory duty of the City of Aransas Pass to adequately supplement whatever may be realized from the grant of state taxes, when article 5591 of Vernon's Sayles' Texas Civil Statutes was enacted, which governs the issuance by a city or county of sea wall or breakwater bonds, and which reads as follows: "Whenever bonds are issued under the preceding article, the county commissioners' court, or municipal authorities, shall annually levy, assess and collect, in the mode prescribed by law for other county or municipal taxes, a tax on the real estate and personal or mixed property in said county, or city, sufficient to pay the interest and provide a sinking fund of not less than two per cent of the principal of all of said bonds; and all taxes collected by virtue hereof shall be held in trust by said county, or city, as a special and inviolable fund for the payment of interest and principal of said bonds; provided, however, that any surplus above the amount required to meet the annual interest may be invested for the benefit of the sinking fund in the bonds issued hereunder, or in bonds of the state of Texas, or of the United States."

The objection is not tenable that reasonable provision is wanting to redeem the bonds because the Legislature, after the sale of the bonds, can repeal the donation of state taxes for twenty years.

State and Federal authorities are uniform that when an act of a state legislature, authorizing a bond issue, creates, or authorizes the creation of, a certain fund for the bond's payment, such provision of the act enters into the contract between the debtor and the holders of the bonds, so that it cannot be repealed by subsequent legislation, without the substitution of something of equal efficacy. The subsequent legislation would impair the obligation of the contract, and therefore come under constitutional condemnation. City of Austin v. Cahill, 99 Texas, 195, 88 S. W., 542, 89 S. W., 552; Bassett v. El Paso, 88 Texas, 168, 30 S. W., 893; Morris & Cummings v. State, 62 Texas, 745; Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed., 162; Seibert v. Lewis, 122 U. S., 284, 30 L. Ed., 1161.

Finding no valid objection to the approval of these bonds, which appear to have been authorized and issued in conformity to the law, the mandamus prayed for is awarded.