

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 28, 1960

Honorable James A. Turman
Executive Director
Texas Youth Council
State Office Building
Austin, Texas

Opinion No. WW-865

Re: Whether the Texas Youth
Council has the authority,
under existing law, to
furnish a prescribed uni-
form for staff members
under their control to
wear while carrying out
their duties, and related

Dear Dr. Turman:                    questions.

        You have requested our opinion in regard to the following
questions:

        "1.   Does the Texas Youth Council have
the authority under existing law (Article
5143d) to require certain staff members to
wear an approved uniform while carrying out
duties prescribed by the Council?

        "2.   Does House Bill 4, Article II, Sec-
tion 1, Line Item 7, General Appropriations,
enacted by the 56th Legislature, for the Texas
Youth Council, Gatesville State School for Boys,
provide operating expense funds for the Council
to purchase approved uniforms, and furnish in-
stitutional laundry for same, to be worn by
custodial staff members during working hours and
while carrying out prescribed duties?

        "3.   If your answers to the above questions
are in the affirmative, will additional statutory
authority be required before the Council can
initiate this essential step in the strengthening
of discipline and control of the Gatesville State
School for Boys?

"4. If your answers to questions one and two above are in the affirmative, can the Controller approve vouchers and issue warrants in payment for such approved uniforms?"

The Texas Youth Council derives its power and authority from the provisions of Article 5143d of Vernon's Civil Statutes.

We shall quote the portions of Article 5143d which we deem relevant to the questions you have propounded.

"Section 1. The purpose of this Act is to create a Texas Youth Council to administer the state's correctional facilities for delinquent children, to provide a program of constructive training aimed at rehabilitation and reestablishment in society of children adjudged delinquent by the courts of this State and committed to the Texas Youth Council, and to provide active parole supervision of such. delinquent children until officially discharged from custody of the Texas Youth Council. . . .

"Sec. 2. This Act shall be liberally construed to accomplish the purpose herein sought."

"Sec. 5(b) The Texas Youth Council shall be responsible for the adoption of all policies and shall make all rules appropriate to the proper accomplishment of its functions."

"Sec. 17. When a child has been committed to the Youth Council as a delinquent child, the Council may:

"(a) Permit him his liberty under supervision and upon such conditions it believes conducive to acceptable behavior; or

"(b) Order his confinement under such conditions as it believes best designed for his welfare and the interests of the public; or (Emphasis added)

". . .

"Sec. 18. As a means of correcting the socially harmful tendencies of a delinquent child committed to it, the Youth Council may:

". . .

"(b) <u>Require such modes of life and</u> <u>conduct as may seem best adapted to fit</u> <u>him for return to full liberty without dan-</u> <u>ger to the public; . . .</u>" (Emphasis added)

"Sec. 21. The Youth Council shall establish rules and regulations for the government of each of such schools and other facilities and shall see that its affairs are conducted according to law and to such rules and regulations; but the purpose thereof and of all education, work, training, discipline, recreation, and other activities carried on in the schools and other facilities shall be to restore and build up the self-respect and self-reliance of the children and youth lodged therein and to qualify them for good citizenship and honorable employment."

Sections 5(b) and 21 of Article 5143d specifically empower the Texas Youth Council to promulgate rules in order to carry out its function and accomplish the purpose of the Legislature.

Sections 1, 17(a), 17(b), 18(b) and 21 of Article 5143d, quoted above, clearly delegate to the Texas Youth Council a broad discretionary power in the administration of the State's correctional facilities for delinquent children. Such discretion extends to the maintenance therein of conditions, mode of life and code of conduct which the Council believes best designed and best adapted to the interests and welfare of the delinquent child, in order to prepare him for a place in our social structure.

The discretion of the Council is broad. The rule making power is expressly given. We cannot say that a rule requiring that the personnel of the various correctional facilities under the control of the Council wear a prescribed uniform during duty hours is wholly arbitrary and not reasonably calculated to accomplish the Legislative purpose. Indeed, common experience teaches that persons in positions of authority, who wear uniforms, are accorded respect and an atmosphere of discipline prevails over the confines to which their authority extends.

Therefore, in our opinion, the Texas Youth Council has the authority to require certain staff members to wear a

prescribed uniform while in the performance of their duties. Consequently, your first question is answered in the affirmative.

Passing now to the consideration of your second question, we quote from Line Item 7 of House Bill 4, Acts 56th Legislature, 1959, Third Called Session, Article II, Chapter 23, Page 482:

| | For the Years Ending | |
|---|---|---|
| "7. For payment of other salaries and wages and professional fees, travel, capital outlay, other operating expenses, replacement and operation of one state-owned automobile, and all other activities for which no other provisions are made........ (Emphasis added) | August 31, 1960 | August 31, 1961 |
| | 1,661,951 | 1,661,951" |

We think that it necessarily follows from what we have said in answering your first question, that an expenditure of State funds for uniforms to be furnished to staff members during duty hours and to be laundered at State expense is an operating expense coming within Line Item 7, if such expenditure does not come within the prohibition of Section 51 of Article III of the Constitution of the State of Texas.

Section 51 of Article III of the Constitution of the State of Texas reads in part as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; . . ."

This provision of the Constitution of Texas prohibits the "gratuitous disposition of the state's money, property, or contractual rights." Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W. 2d 576 (1934); Friedman v. American Surety Co. of New York, 137 Tex. 149, 151 S.W. 2d 570 (1941). However, it does not prevent an appropriation or expenditure of State funds for a purpose directly and substantially related to the performance of governmental functions of the State. Bexar County v. Linden, 110 Tex. 339, 220 S.W. 760 (1920); Road District No. 4, Shelly Co. v. Allred, 68 S.W. 2d 164

(Tex. Comm. App. 1934), opinion adopted by the Supreme Court of Texas; City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818 (1923).

If the wearing of uniforms during duty hours is in furtherance of the Legislative purpose, and we have so held in answering your first question, then an expenditure by the Council in purchasing such uniforms and providing laundry service therefor, is for a purpose directly and substantially related to the performance of a governmental function and is therefore not within the prohibition of Section 51 of Article III of the Constitution of the State of Texas.

In connection with what we have just said, it is to be noted that the individuals who are to wear the uniforms have no proprietary interest in such uniforms. The uniforms are the property of the State of Texas and are part of the operating equipment necessary to the performance of the Council's function. The fact that some one or more individuals may derive some incidental personal benefit from the expenditure of State funds does not make the expenditure one for private, rather than public, purposes.

Consequently, in our opinion, the purchase of the uniforms contemplated, under the circumstances set forth, is an expenditure authorized by and coming within Line Item 7, House Bill 4, Acts 56th Legislature, 1959, Third Called Session, Article II, Chapter 23, Page 482.

Considering our answers to your first two questions, no further legislation is necessary to authorize the purchase of the uniforms contemplated, under the stated facts. Consequently, your third question is answered in the negative.

In answer to your fourth question, it is only necessary to state that since we have held the purchase of the uniforms to be a valid expenditure of State funds under the Constitution of the State of Texas and the Appropriation Act of the 56th Legislature, the Comptroller is authorized to approve vouchers and issue warrants in payment for the proposed uniforms.

## SUMMARY

The Texas Youth Council has the authority to require certain staff members to wear an approved uniform during duty

Honorable James A. Turman, Page 6 (WW-865)

hours; the uniforms may be purchased by
the Council and laundry service provided
from existing appropriations and furnish-
ed to staff members for their use only;
the Comptroller can approve the vouchers
and issue warrants for such expenditures.

Yours very truly,

WILL WILSON
Attorney General of Texas

W. O. Shultz
Assistant Attorney General

WOS:mm

APPROVED:

OPINION COMMITTEE
J. C. Davis, Chairman

Byron Fullerton
Charles D. Cabaniss
C. Dean Davis
Robert A. Rowland

REVIEWED FOR THE ATTORNEY GENERAL

BY: Leonard Passmore