

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

January 24, 1962

Honorable Bill Hollowell, Chairman
Committee on State Affairs
House of Representatives
Austin, Texas

Opinion No. WW-1248

Re: Constitutionality of
House Bill 95 creating
the State Disaster
Council.

Dear Mr. Hollowell:

Your request for an opinion reads as follows:

"House Bill 95 by Maco Stewart, et al,
has been referred to the State Affairs
Committee, House of Representatives. The
hearing on this bill will be set shortly.
Your official opinion is requested as to
the constitutionality of House Bill 95.

"The primary question is whether or not
Article 3, Sec. 51 of the Texas Constitution
provides sufficient authority for the State
to assume its responsibility in cases of a
public calamity instead of relying entirely
on Federal Aid."

Section 1 of House Bill 95 states the purpose of
the Act as follows:

"Section 1. The State of Texas by this
Act, which may be cited as the 'State Responsi-
bility for Disaster Act,' declares itself fully
capable of resuming the State responsibility to
its citizens in cases of public calamity as en-
acted seventy-five (75) years ago in accordance
to the duty prescribed by the Constitution of
the State of Texas."

Section 2 creates the State Disaster Council to
consist of the Governor, Lieutenant Governor and the
Attorney General and prescribes the duties of this Council
which in substance is to determine whether any flood,

drought, fire, hurricane, earthquake, storm or other catastrophe in any part of Texas is of sufficient severity and magnitude to constitute a public calamity and to provide state assistance to areas which are determined to be public calamity areas.

Section 6 creates a special fund to be known as the Texas Disaster Fund and allocates a portion of tax moneys to be credited to such fund and makes provisions for its use and investment.

Section 8 is the severability clause and Section 9 again states the purpose of the Act as follows:

"Sec. 9.  The fact that during the last decade One Hundred Twenty Nine Million, Seven Hundred Thousand Dollars ($129,700,000) of 'free' 100% Federal Aid has been expended to aid victims of public calamities in Texas without financial contribution by the State of Texas, whereas seventy-five (75) years ago the State of Texas without Federal aid fulfilled the responsibility in cases of public calamity laid down in Article III, Section 51 of the Constitution of the State of Texas; and the fact that State's Rights means State's responsibilities rather than blind obeisance to the Federal dole, creates an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each house be suspended, and this Rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted."

Section 51 of Article III of the Constitution of Texas prohibits the granting of any public moneys to any individual, association or corporation except in those cases of public calamity and specifically states:

"The provision of this Section shall not be construed so as to prevent the granting of aid in cases of public calamities."

The test of "cases of public calamity" has been settled in City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818 (1923) wherein the Supreme Court stated:

"The people of the state at large have a direct and vital interest in protecting the coast cities from the perils of violent storms. The destruction of ports, through which moves the commerce of the state, is a state-wide calamity.  Hence sea walls and breakwaters on the Gulf coast, though of special benefit to particular communities must be regarded as promoting the general welfare and prosperity of the state.  It is because of the special benefits to particular cities and counties that special burdens on property within their boundaries, through taxation are justified. But the state, in promoting the welfare, advancement, and prosperity of all her citizens, or in aiding to avert injury to her entire citizenship, cannot be regarded otherwise than as performing a proper function of state government.  Cities or counties furnish convenient and appropriate agencies through which the state may perform duties resting on the state, in the performance of which the cities or counties have a special interest.  The use of the cities or counties as agents of the state in the discharge of the state's duty is in no wise inhibited by the Constitution in section 51 of article 3."

Applying the foregoing test to House Bill 95, it is noted that aid is to be granted to public calamity areas when such calamity is caused by "any flood, drought, fire, hurricane, earthquake, storm or other catastrophe of sufficient severity and magnitude to constitute a public calamity," within the meaning of Section 51, Article III of the Constitution of Texas.

You are therefore advised that the provisions of House Bill 95 as furnished with your request are constitutional.

## S U M M A R Y

House Bill 95 of the Third Called Session of the 58th Legislature providing for the creation of a State Disaster Fund to be

expended for the purpose of granting
aid to public calamity areas as defined
in Section 51 of Article III of the Con-
stitution of Texas is constitutional.

Very truly yours,

WILL WILSON
Attorney General of Texas

By John Reeves
   John Reeves
   Assistant

JR:mkh:zt

APPROVED:

OPINION COMMITTEE
Howard W. Mays, Chairman

Malcolm L. Quick
Dwain Erwin
Marvin Thomas
Elmer McVey

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Houghton Brownlee, Jr.