

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

August 26, 1976

The Honorable Robert E. Schneider          Opinion No. H-869
Executive Director
Texas Water Rights Commission              Re:  Whether section
P. O. Box 13207                            25.031(c), Water Code,
Austin, Texas   78711                      authorizing special
                                           districts to purchase a
                                           portion of the capacity
                                           of a regional waste dis-
                                           posal system, can be
                                           applied constitutionally
                                           to bonds authorized prior
                                           to the passage of the
                                           statute.

Dear Mr. Schneider:

        You have requested our opinion regarding the authority
of a special district to use bond proceeds to purchase a
portion of the capacity in a regional waste disposal system.

        Your first question is:

        whether Section 25.031(c) [Water Code] is
        a constitutionally valid authorization for
        Inverness Forest Water Control and Improve-
        ment District to use the [previously voted]
        bond proceeds . . . to purchase capacity in
        the Gulf Coast Waste Disposal Authority's
        regional sewage treatment plant. . . .

Section 25.031(c) provides in pertinent part:

        Notwithstanding any provision of this
        chapter or any other law to the contrary,
        a district may use the proceeds of bonds
        issued for the purpose of constructing a

p. 3663

> waste disposal system or systems, and payable
> wholly or in part from ad valorem taxes, for
> the purchase of capacity in, or a right to have
> the wastes of the district treated in, a
> waste collection, treatment, or disposal
> system and facilities owned or to be owned
> exclusively or in part by another public agency,
> and a district may issue bonds payable
> wholly or in part from ad valorem taxes
> specifically for such purpose if a majority
> of the resident electors of the district
> have authorized the governing body of the
> district to issue bonds for that purpose
> or for the purpose of constructing a waste
> disposal system or systems. The bonds
> shall be issued in accordance with the
> provisions of, and shall be subject to the
> same terms and conditions of, the laws
> authorizing the district to issue bonds
> for the purpose of constructing waste
> collection, treatment, and disposal systems,
> except as otherwise provided in this sub-
> section.

In brief, this question turns on whether section 25.031(c)
of the Texas Water Code, as to bonds authorized prior to its
enactment, alters the result of Attorney General Opinion H-
567 (1975), which indicated that proceeds from the sale of
bonds in 1965 by Inverness Forest Improvement District could
not be used to contract for sewage disposal services where
the district would neither own nor operate the facilities.
While section 25.031(c) is designed to permit the "purchase
of capacity" type transaction which Attorney General Opinion
H-567 (1975) held to be unauthorized, the enactment of that
section does not change the basic results of Opinion H-567
concerning the Inverness Forest "special district."

First, there is the obvious problem of applying
section 25.031(c) retroactively. Tex. Const. art. 1, § 16.
Second, as initially determined in Attorney General Opinion
H-567 (1975), bond proceeds may only be used for the purposes
for which they were voted. It is clear that a resolution
calling a bond election becomes a part of the contract and
agreement between the voters and the District, should the
voters authorize the issuance of the bonds. Crowell v.

Cammack, 40 S.W.2d 259 (Tex. Civ. App. -- Amarillo 1931, no writ). To hold that the Legislature could change the agreement between the voters and the district could constitute an impairment of the obligation of contracts. Tex. Const. art. 1, § 16.  Third, the Legislature cannot, by legislative enactment, alter the results or effect of an election held pursuant to a constitutional mandate:

> [T]he Legislature shall not authorize
> the issuance of any bonds or provide
> for any indebtedness against any
> reclamation district unless such
> proposition shall first be submitted
> to the qualified property tax-paying
> voters of such district and the
> proposition adopted.  Tex. Const.
> art. 16, § 59(c).

City of Aransas Pass v. Keeling, 247 S.W. 818 (Tex. Sup. 1923). In short, bond proceeds must be used for purposes for which they were voted.  Lewis v. City of Fort Worth, 89 S.W.2d 975 (Tex. Sup. 1936); Barrington v. Cokinos, 338 S.W.2d 133 (Tex. Sup. 1960); City of Beaumont v. Priddie, 65 S.W.2d 434 (Tex. Civ. App. -- Austin 1933, no writ).  Therefore, the answer to your first question is that the enactment of section 25.031(c) of the Texas Water Code does not alter the conclusions reached in Attorney General Opinion H-567 (1975) regarding the use of previously voted bond proceeds.

If the result of H-567 is not affected and the special district must use the bond proceeds to purchase a proprietary interest in the regional sewage plant rather than entering into a service contract for plant capacity, you ask that we

> determine the nature and scope of the
> proprietary interest which must be
> purchased . . . .

It is pertinent to note that the bond propositions submitted to the electorate of the Inverness Forest Improvement District on August 14, 1965, authorized bonds

>for the purpose of <u>purchasing</u> and <u>con-</u>
><u>structing</u> a water and sanitary sewer
>system and a sewage disposal plant for
>the district. . . .   (Emphasis added).

Furthermore, similar propositions were passed in October 16,
1967 and February 14, 1970 elections, which provided bonds

>for the purpose of purchasing and/or
>[February 14, 1970 proposition used
>"and" instead of "and/or"] constructing
>extensions and additions to the district's
>existing water and sanitary sewer system
>and drainage system. . . .

Although Opinion H-567 did not involve the method to be
used or what would constitute "purchasing and constructing,"
it would certainly be within the "sound judgment and
discretion" of the special district to purchase and construct
as they determine <u>within the electoral</u> guidelines.  <u>Barrington</u>
<u>v. Cokinos, supra,</u> at 142.  Therefore, it would not be
unreasonable for the special district to make a determination
that purchasing and constructing, or causing to be constructed,
an undivided, legal interest in a regional waste plant would
satisfy the electoral mandate.  The special district would
own a portion of the physical plant rather than the mere
contractual right to a guaranteed use or portion of the
capacity of the regional system.  Thus, the special district
would have used the bond proceeds to purchase and construct
a facility which the electorate had authorized.

Since the issuance of bonds creates a contract between
the issuer and the bondholders, <u>City of Aransas Pass v.</u>
<u>Keeling, supra,</u> it should be noted that the definition of
"system" in each Bond Order is as follows:

>The term system as used in this order
>shall include and mean water works and
>sanitary sewer system owned and operated
>by the District, and all extensions and
>improvements thereof and improvements
>thereto whensoever made.

Neither the bond election propositions, nor the Bond Order specifies how the facilities are to be purchased and constructed. It is, therefore, obvious that the portion of the regional system purchased by the special district would become part of the "system." Provisions of Chapter 25 of the Texas Water Code also support the proposed transaction since "[a] district may contract . . . to purchase . . . disposal facilities or systems." Water Code § 25.022. See Water Code §§ 25.024; 25.025; 25.027; 27.028. Therefore, in answer to your second question, we believe that it would be reasonable, and in pursuance of the electoral mandate as well as the Texas Water Code, to approve issuance and use of bonds to purchase an undivided, legal interest in a regional system, if the special district decides to do so in the exercise of its discretion.

In your third and final question, you ask:

> [I]f the district should purchase a
> proprietary interest in the regional
> system, to what extent must the district
> participate actively and directly, if at
> all, in the operation and maintenance of
> the system?

Neither Attorney General Opinion H-567 (1975), nor the bond election propositions or Bond Orders specifically address this question. However, provisions of Chapter 25 of the Texas Water Code specifically permit such operation contracts between a special district and a "district." Water Code §§ 25.027; 25.028. Furthermore, one political sub-division of the State, such as Inverness Forest, can transfer money to another political subdivision of the State where the latter assumes the unqualified burden and duty of using it for a governmental function of the former; however, there must be a quid pro quo contract. Bexar County Hospital District v. Crosby, 327 S.W.2d 445 (Tex. Sup. 1959); San Antonio River Authority v. Shepherd, 299 S.W.2d 920 (Tex. Sup. 1957); City of Aransas Pass v. Keeling, supra. Even so, the operation contract should provide only for the operation of the facilities in question with sufficient assurance that the special district does not delegate away

its governmental powers.  City of Galveston v. Hill, 519
S.W.2d 103 (Tex. Sup. 1975).  In our opinion, the purchase
of an undivided, legal interest in the regional plant, to be
operated by a "district," would not be an unlawful delegation
of governmental powers, since the special district would be
using the services of the operating agency without delegating
rate making or other powers.  Therefore, in answer to the
third question, the special district may enter into an
operation contract with a Texas Water Code "district."

## S U M M A R Y

The enactment of section 25.031(c) of
the Texas Water Code does not affect the
validity of Attorney General Opinion H-567
(1975) as it applies to the Inverness
Forest Improvement District.  The special
district, limited by the bond election
proposition submitted, may not acquire
a contractual right to purchase a
percentage of capacity in a regional
system.  However, the special district,
in its discretion, may use bond proceeds
to purchase an undivided, legal interest
in a regional system.  The special district
may contract with a "district" for the operation
of its portion of the regional system under
Chapter 25 of the Water Code.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb