

# The Attorney General of Texas

September 10, 1979

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable John J. Kavanagh, M.D.
Commissioner
Texas Department of Mental Health
and Mental Retardation
Box 12668
Austin, Texas 78711

Opinion No. MW-55

Re: Authority of Department of Mental Health and Mental Retardation to pay community centers for start-up costs prior to receiving services.

Dear Dr. Kavanagh:

You ask whether a facility of the Texas Department of Mental Health and Mental Retardation is authorized to contract with a community center created pursuant to article 5547-203, V.T.C.S., to plan, develop, and provide community-based residential services. Although you have provided us with examples of specific contracts which illustrate your inquiry, neither your question nor our answer is specifically directed to the details of those contracts.

The Texas Department of Mental Health and Mental Retardation consists of the Board of Mental Health and Mental Retardation, commissioners, staff members, and thirty facilities, including state hospitals. V.T.C.S. art. 5547-202, § 2.01. All administrative, rule-making, and decisional powers granted by article 5547-202 are vested in the commissioner, subject to policies formulated by the board. V.T.C.S. art. 5547-202, § 2.11(b). Section 2.13 of article 5547-202 provides as follows:

> The Department may cooperate, negotiate and contract with local agencies ... [and] community centers ... to plan, develop and provide community-based mental health and mental retardation services.

Section 2.17(a) provides:

> From funds available to it the Department is authorized to provide mental health and mental retardation services through the operation of halfway houses, community centers, and other mental health and mental retardation services programs.

These provisions authorize the department to contract with community centers to provide mental health and mental retardation services. Since section 2.11(b) vests the department's administrative and decisional powers in the commissioner, subject to board policy, agreements between a facility of the department and a community center must have his approval. The contract terms must be consistent with board policy.

You next ask whether a facility of the Texas Department of Mental Health and Mental Retardation is authorized to pay the community center for start-up costs incurred prior to providing such services to clients as consideration for the center's planning and developing such services. It is suggested that payment in advance of the provision of services violates article III, section 50 of the Texas Constitution, which provides:

> The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever.

Article III, section 52, a similar constitutional provision, prohibits the legislature from authorizing political subdivisions to lend their credit or grant public money to individuals or corporations. In construing this provision, a Texas court stated as follows:

> Many cases could be cited which involve an arrangement between two governmental entities in which one rendered agreed services to the other in exchange for money paid at a different time than when services were rendered, . . . Two requirements must be met in such a transaction. (1) The purpose for which the obligation or payment or transfer was made must be within the power of the entity incurring the obligation or making the payment or transfer of funds. City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818 (1923). (2) The political entity that receives the funds has to be obligated (by statute or contract) to use the funds for the public purpose. Road District No. 4, Shelby County v. Alred [sic], 123 Tex. 77, 68 S.W.2d 164 (1934).

State ex rel. Grimes County Taxpayers Association v. Texas Municipal Power Agency, 565 S.W.2d 258, 265 (Tex. Civ. App. — Houston [1st Dist.] 1978, no writ). The court determined that payments by four cities to the Texas Municipal Power Agency were not grants, donations, or gratuities, but instead "were payments made for services rendered and to be rendered." Supra at 265. These payments do not violate article 3, section 52 of the constitution. See also San Antonio River Authority v. Shepperd, 299 S.W.2d 920 (Tex. 1957) (county could pay tax money to reclamation authority to furnish flood control program over 30-year period); Attorney General Opinion H-74 (1973) (Blind Commission may advance to its employees expenses to be incurred). In our opinion, article III, section

50 does not prohibit advance payment by one governmental entity for services which another governmental entity is obligated to render in the future.

It is also suggested that the following statute presents the only instance in which one agency of the state may make an advance payment to another:

> All State Agencies and Institutions are authorized to make advance payments to Federal and State Agencies for merchandise purchased from such agencies when advance payments will expedite the delivery of the merchandise.

V.T.C.S. art. 658a. In our opinion, this statute provides an exception to articles 655 through 658, V.T.C.S., relating to payment for goods and services purchased through the Board of Control. These provisions require payment for goods and services only after they have been inspected by the recipient agency and the invoice has been approved by the Board of Control and the Comptroller. We believe these provisions and the exception found in article 658a apply only to services purchased through the Board of Control. We find no indication in sections 2.11(b) and 2.17(a) of article 5547-202 that the department must work through the Board of Control to purchase mental health and mental retardation services from a community center. Article 664-3, V.T.C.S., the State Purchasing Act of 1957, authorizes the Board of Control to contract for "only services of the type heretofore contracted for by the State Board of Control...." Sec. 3(b). Cf. Attorney General Opinion M-316 (1968) (community centers may not make purchases through Board of Control). We do not believe that article 658a, V.T.C.S., bars the department from paying start-up costs prior to receiving mental health or mental retardation services from the community centers. Any contract must of course be properly entered into as stated in answer to your first question.

## SUMMARY

> The Texas Department of Mental Health and Mental Retardation may contract with community centers to provide community-based residential services. The department may pay the community centers their start-up costs incurred prior to providing such services to clients.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Susan Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Martha Allen
David B. Brooks
Susan Garrison
Rick Gilpin
William G Reid
Bruce Youngblood