

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 8, 1992

Ms. Cathy Bonner
Executive Director
Texas Department of Commerce
P. O. Box 12728
Austin, Texas 78711-2728

Opinion No. DM-137

Re: Whether a municipality which has levied a sales tax under subsection 4A(d), article 5190.6, V.T.C.S., may reduce or eliminate the tax after issuance of the bonds for which the tax was levied (RQ-383)

Dear Ms. Bonner:

You have requested our opinion regarding the constitutionality of two recent amendments to section 4A of article 5190.6, V.T.C.S., the Development Corporation Act of 1979.[1] Section 4A authorizes a city covered by its provisions to call an election to levy a sales and use tax, at a rate of one-eighth, one-fourth, three-eighths, or one-half percent, for the benefit of an industrial development corporation created by the city. Proceeds from such tax "may be used to pay the principal of, interest on, and other costs relating to the corporation's bonds." V.T.C.S. art. 5190.6, § 4A(f). Pursuant to the recent amendments, a city may call a subsequent election to reduce or increase the rate of the sales and use tax "in one or more increments" up to a maximum of one-half percent and down to a minimum of one-eighth percent[2]; or to "limit the length of time that a sales and use tax may be

---

[1]The amendments in question, denominated as subsections (n) and (o) of section 4A, were enacted as part of House Bill 916, Acts 1991, 72d Leg., ch. 184, at 802-8, effective May 24, 1991.

[2]Subsection (o) provides:

> In a city in which a sales and use tax for the benefit of a corporation has been imposed under this section, in the same manner and by the same procedure the city by majority vote of the qualified voters of the city voting at an election called and held for the purpose may reduce or increase the tax. The rate may be reduced in one or more increments of one-eighth of one percent to a minimum of one-eighth of one percent or increased in one or more increments of one-eighth of one percent to a maximum of one-half of one percent. On petition of 10 percent or more of the registered voters of the city requesting an election on the increase or decrease of the tax under this section, the governing body of the city shall order an election on the issue. The ballot shall be printed in the same manner as the ballot under Subsection (m) of this section.

imposed.["]3 You ask whether the reduction provisions of subsections (n) and (o) may be applied to bonds which were previously issued by the corporation.

We will first address this question with respect to bonds issued prior to the effective date of the statute, May 24, 1991. As to such bonds, it is clear that article I, section 10 of the United States Constitution, and article I, section 16 of the Texas Constitution,[4] which prohibit the enactment of any law impairing the obligation of contracts, act to preclude any reduction in the tax rate or any limitation of the time during which the tax may be imposed. In *City of Aransas Pass v. Keeling*, 247 S.W. 818 (Tex. 1923), the Texas Supreme Court said that, where a legislative act authorizing a bond issue creates, or authorizes the creation of, a particular fund for payment of bonds, those statutory provisions become a part of the contract between the debtor and the bondholders, so that they cannot be repealed or limited by subsequent legislation without the substitution of a funding mechanism of equal efficacy. Any subsequent limiting legislation "would impair the obligation of the contract, and therefore, come under constitutional condemnation." *City of Aransas Pass*, 247 S.W. at 821.

In the situation you present, purchasers of bonds prior to May 24, 1991, acted in good faith reliance on the statutory representations that their bonds were secured by a particular sales tax rate. The statute made no provision for reducing or otherwise limiting that tax. As a result, subsequent legislation which purports to permit the reduction or other limitation of that tax is ineffective to do so, because such alteration would impair the obligation of the contract between the city and such bondholders.

Your question must also be addressed with regard to those bonds issued subsequent to the effective date of the statute. It is well established that the laws in

---

[3]Subsection (n) provides, in pertinent part:

> At an election called and held under Subsection (d) or (o) of this section, the city may also allow the voters to vote on a ballot proposition that limits the length of time that a sales and use tax may be imposed. . . . A sales and use tax imposed for a limited period under this subsection expires on the date set by the governing body under this section or on an earlier date if, by a majority of the voters voting in an election held in the city, the tax is repealed.

[4]The federal constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ." The Texas Constitution provides: "No law . . . impairing the obligation of contracts, shall be made."

effect at the time of a bond issue become a part of the contract between the bondholders and the issuing authority. *Bankers Life Co. v. Breckenridge Indep. School Dist.*, 97 S.W.2d 933, 937 (Tex. 1936); *see also Dallas County Levee Improvement Dist. No. 6 v. Rugel*, 36 S.W.2d 188, 189-90 (Tex. Comm'n App. 1931, holding approved). Thus, as to any bonds issued after May 24, 1991, potential purchasers must be deemed to have been aware of the provisions of subsections (n) and (o), *i.e.*, that the tax rate then in effect was subject to reduction or other restrictions by a subsequent election.

This does not end our inquiry, however. In Attorney General Opinion DM-31 (1991), we recognized that, despite the general principle that the law existing when a contract is made becomes a part of the contract, *subsequent action* might constitute an impairment. In that opinion, we considered a situation in which a municipality, after a referendum vote, granted a $50,000 homestead exemption to resident taxpayers who were either disabled or at least 65 years of age. Prior to the referendum, the city had pledged its ad valorem tax revenues for the repayment of bonds. A statute required the assessor-collector to disregard the increased exemption if (1) prior to the granting of exemption, the city had pledged its taxes in support of bonds; and (2) granting the exemption would impair those bonds. The opinion concluded that the homestead exemption could not "validly be granted if doing so would impair the city's ability to fulfill its pre-existing contractual obligations to bondholders." Although the actual exemption had not been granted at the time the bonds were issued, legislation existed which authorized the city to confer the exemption.

Thus, the crucial date in Attorney General Opinion DM-31 was not the statute *authorizing* the ordinance granting the exemption, but the adoption of the ordinance *granting* the increased exemption, and any bonds issued prior to that date had the protection of the contract clause. Analogously, the crucial date in the situation you pose is the date of the rollback election. Prior to that time, only the *potential* for a tax reduction or limitation existed. Purchasers of the bonds of a political subdivision should not be required to speculate as to future tax rates.

In the event that subsections (n) and (o) were made applicable to all bonds issued after May 24, 1991, bond purchasers would necessarily be obliged to engage in such speculation. As a consequence, the bonds could not in all likelihood be sold. To read subsections (n) and (o) as applicable to all bonds issued after the effective date of the statute would render ineffectual the entire scheme of section 4A. Since the legislature, had it wished to abrogate the statutory mechanism of section 4A, could have done so directly by repealing it, we are not willing to attribute to the

legislature an intent to scuttle that mechanism by circuitous means. We hold, therefore, that a reduction in the sales tax rate, or a limitation on the amount of time the tax may be collected, may not be applied to any bonds issued prior to the date of a rollback election.

### S U M M A R Y

Where, pursuant to subsections (n) and (o) of section 4A, article 5190.6, V.T.C.S., an election is held to reduce the sales and use tax rate collected by a municipality on behalf of an industrial development corporation, or to limit the length of time during which the tax may be collected, such reduction or limitation may not be applied to any bonds issued prior to the date of the election.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General